Florence A. Rodgers, Plaintiff-Appellant, v. Reserve
Life Insurance Company, Defendant-Appellee.

Gen. No. 10,887.

Second District.

February 15, 1956.

Released for publication March 5, 1956.

Victor and Ghent, of Rockford, for appellant.

Foltz, Haye & Keegan, of Rockford, for defendant-appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Appellee, Reserve Life Insurance Company, on September 24, 1952, issued its policy of insurance, by the provisions of which it agreed to pay to Florence A. Rodgers, mother of James O. Rodgers, the sum of $1,000 in the event James O. Rodgers lost his life resulting directly and independently of all other causes from accidental bodily injury sustained while the policy was in effect. On September 25, 1954, while the policy was in full force and effect, James O. Rodgers, twenty-one years of age, accompanied by Patricia Allen, eighteen years of age, and Judy Gorman, seventeen years of age, was driving a 1950 Chevrolet convertible automobile with a 1954 motor. The car in which they were riding left the pavement and was overturned and James O. Rodgers was killed.

On January 14, 1955, Florence A. Rodgers, the beneficiary, filed the instant complaint to recover under the provisions of the policy. The defendant answered, admitting the issuance of the policy and that it was in effect on September 25, 1954, and admitted the death of James O. Rodgers on that day, but denied that he died from accidental bodily injuries and set up as an affirmative defense that Rodgers drove his automobile on a country road at night at a speed of 100 miles per hour while approaching a curve in disregard of the protests and warnings from the passengers in his car and from these allegations the pleader concluded that Rodgers' death resulted from his wilful and wanton driving of an automobile under circumstances which exhibited a reckless disregard for his own safety. The plaintiff replied, denying the allegations of the affirmative defense and the issues made by the

543

pleadings were submitted to the court, without a jury, resulting in a finding and judgment for the defendant and the plaintiff appeals.

There is no conflict in the evidence. The defendant, by its insurance policy, agreed to pay the plaintiff $1,000 in the event her son, James O. Rodgers, lost his life, resulting directly and independently of all other causes, from accidental bodily injury. On the evening of September 25, 1954, James O. Rodgers attended a party with a group of young people near a forest preserve. About eleven o'clock that evening he left the party in his automobile accompanied by Lee Johnson, Patricia Allen, and Judy Gorman. Johnson was in the back seat, but his presence was not revealed to Patricia Allen or Judy Gorman, who occupied the front seat with Rodgers, until Rodgers stopped the car in front of the home of Johnson in Rockford. Rodgers got out of the car there and let Johnson out. He, Rodgers, then reentered the car, and he and his two guests intended to return to the party. While Rodgers, upon the return trip, was driving along Kishwaukee Street near an intersection his car hit the rear end of a Cadillac car driven by a lady whose name does not appear in the record. Rodgers got out of his car, and the lady driving the Cadillac left her car, and some words were exchanged. Rodgers returned to his car and drove rapidly in an easterly direction on Corlett Road, which is a twenty-foot paved highway. As he approached a curve in the road, Patricia Allen testified that she heard Judy Gorman tell Rodgers to watch out as there was a curve ahead; that she, Patricia Allen, looked at the speedometer and it registered 100 miles per hour; that she then told Rodgers that he was going too fast to go around a curve and Rodgers answered, saying "Yes" or "Yup." A few seconds thereafter the car left the paved portion of the highway at the beginning of the curve and travelled approximately 400 feet on the east shoulder as the

road curved to the right in a southerly direction. The car hit a steel guard rail, turned over on its top and skidded another 50 feet before it came to rest. Rodgers was thrown from the car, and his dead body was found under the guard rail.

The sole question presented by this record is whether, under the detailed facts, the death of the insured was an accident within the meaning of provisions of the policy.

■ The terms "accident" and "accidental" as used in insurance policies covering accidental death mean "happening by chance; unexpectedly taking place; not according to the usual course of things or not as expected." (45 C. J. S., Insurance, sec. 753, p. 777.) The author of the Article on Insurance in 29 Am. Jur. sec. 931, pp. 706, 707, states that the words "accident" and "accidental" have never acquired any technical significance in law and, when used in an insurance contract, are to be construed and considered according to the ordinary understanding and common usage and speech of people generally; that the courts are practically agreed that these words mean that which happens by chance or fortuitously, without intention or design and which is unexpected, unusual and unforeseen. "The definition," says this authority, "that has usually been adopted by the courts is that an accident is an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected."

Counsel for appellee insists that the evidence discloses that the insured drove his automobile with wilful disregard of his own safety and that his death resulted from his own deliberate misconduct and, therefore, there can be no recovery, citing Cory v. Woodmen Accident Company, 333 Ill. 175, which was an action upon an accident insurance policy. The facts in the Cory case disclosed that Cory and another per-

son were engaged in an argument in front of Cory's home. Cory advanced toward the other person and was told by the other person, who pulled a revolver from his pocket, that if he, Cory, came closer he would shoot him. Cory continued to advance and was shot and killed. In holding that there could be no recovery the court stated that a person with ordinary intelligence and prudence would have heeded the warning and would reasonably expect and foresee that if he continued to advance the other person might shoot and cause serious injury, the court quoted from Prudential Casualty Co. v. Curry, 10 Ala. App. 642, 65 So. 852, viz., (p. 181): "An accident may be said to be an unforeseen or unexpected event of which the insured's own misconduct is not the natural and proximate cause, and hence a result ordinarily and naturally flowing from the conduct of the insured cannot be said to be accidental even when he may not have foreseen the consequence, and the happening of an event, to be termed an accident, must not only be unforeseen, but without the design and aid of the insured."

Thompson v. Prudential Ins. Co. of America, 84 Ga. App. 214, 66 S.E.2d 119, also cited by appellee, was an action by the mother of Robert L. Thompson to recover double indemnity provided in two policies of insurance issued by the defendant company upon the life of her son in the event the insured should come to his death as the result, directly and independently of all other causes, of bodily injuries effected solely through external, violent, and accidental means. It appeared from the evidence that the insured was a boy sixteen years of age, and on the evening of August 6, 1949, obtained a revolver and inquired of another boy friend whether he wished to play "Russian Roulette." His friend answered in the affirmative, and then the insured removed all the cartridges from the cylinder of the revolver except one, spun the cylinder around, and then handed the revolver to his friend, who said:

"Let's put it up. Don't play with it." Robert, the insured, then said: "All right, I will do it first," and he put the end of the barrel to his head and fired it and was killed. In affirming a judgment rendered upon a directed verdict in favor of the defendant, the court said: "Where one places a loaded pistol to his head and voluntarily pulls the trigger, knowing the gun to be loaded and lethal, nothing more appearing, it is unquestionably no accident that this action results in his injury or death, nor can his death or injury be said to have been effected by accidental means. So, too, where one engages in a game of Russian Roulette in which all but one of the cartridges are removed from the cylinder of a revolver, the cylinder is spun, the revolver is placed by the participant to his head, and the trigger is voluntarily pulled without ascertaining the position of the cartridge in the chamber in its relation to the firing mechanism, and it occurs that when the trigger is pulled the gun fires and kills or injures the participant, his death or injury is no less intentional than had the gun been fully loaded and his death or injury cannot be said to have been the result of accident or effected by accidental means. In such a case, it will be presumed that the participant intended that he should be killed or injured should fate stop the cartridge in the spinning cylinder in firing position. One engaging in such a bizarre passtime with a lethal weapon, if he be compos mentis, knows that he is courting death or severe injury, and will be held to have intended such obvious, and well known results, if he is killed or injured. The insured, so far as the evidence shows, was not 'play-acting' or engaging in a pseudo game of Russian Roulette. The cartridges were not blanks. He placed a 'live' cartridge in the cylinder of the revolver and made no effort to ascertain the position in which the cartridge stopped in relation to the firing mechanism, before pulling the trigger. Such reckless abandon and expo-

547

sure to a known, and obvious danger cannot be said to have been accidental, nor can it be said that his death was effected by accidental means. The most that can be said for such a participant is that he hoped the cartridge would not stop in the firing position when his turn to pull the trigger came. Under these circumstances we think the plaintiff failed to establish that the insured's death was effected by accidental means within the meaning of that term in the policies of insurance and it follows that the trial court did not err in directing a verdict for the defendant, nor in overruling the motion for a new trial."

In Kalahan v. Prudential Ins. Co. of America, 84 N.Y.S.2d 433, also cited by appellee, it appeared that the insured entered an apartment occupied by his wife and children who were living separate and apart from him. Upon being admitted to the apartment by the son, who acted in accordance with his mother's instructions, the insured slapped his wife and grabbed her and placed his hands around her neck. The son, sixteen-years-old, appeared with a revolver and ordered his father to leave his mother alone and the father then lunged toward his son who shot and killed the father. In holding that the death of the father was not accidental within the meaning of a policy which provided for double indemnity in case of accidental death, the court quoted from Piotrowski v. Prudential Ins. Co., 141 Misc. 172, 252 N. Y. Supp. 313, 316 where it is said: "A person intends the natural and probable consequences of his acts and, accordingly, if the consequences are natural and probable, he will not be heard to say that he did not intend them. In this view any occurrence which naturally and probably results from the situation in which a person voluntarily places himself under such circumstances that he can foresee, or will be presumed to foresee, the result, must be held to be expected by him and is not, therefore, in any proper sense an accident." The court then concluded,

"Here insured voluntarily put himself in the position of an agressor. He obtained entrance to his wife's apartment at an unseemly hour; there he at once embarked upon a course of violence in attacking her. The son, following a most human and natural instinct, sought to protect his mother with the threat of a revolver. Insured then directed the course of his violence against the son, by gesture and action, and in so doing was shot to death. Every step in the affair leading to the tragedy—'the quality and purpose of the transaction as a whole'—determines that the death resulted 'naturally and probably' from the position in which insured voluntarily placed himself. The death was not accidental within the meaning of the policy."

We have examined the other cases relied upon by counsel for appellee to sustain judgment of the lower court, but the facts in none of them are analagous to the facts in the instant case.

██ In Yates v. Bankers Life and Casualty Co., 415 Ill. 16, cited by appellant, it appeared that the insured, a person suffering a physical disability, entered into the living room of one Lloyd Richardson with his hands extended and open, carrying no weapon and making no threats or gestures. However, he did not answer when Richardson asked him twice what he wanted, but merely walked toward Richardson. Without any intention of hurting the insured in any way, Richardson pushed him by the shoulder out of the front door. It appeared that the front door opened onto a porch which was some six inches lower than the floor of the living room, and there was a single wooden step from the front porch to the cement sidewalk. Yates was later found lying on his back on the cement sidewalk and died as a result of a skull fracture. The Supreme Court reversed the judgment of the Appellate Court and affirmed the judgment of the circuit court and held that the death of the insured was caused by accidental means, notwithstanding the

fact that the insured voluntarily set in motion the chain of events that resulted in his death. In the course of its opinion the court cited United States Mut. Acc. Ass'n v. Barry, 131 U. S. 100, and then went on to say (p. 22): "As in the Barry case, the injuries and death of Yates were caused by something unforeseen and unexpected occurring in the course of an intentional act, i.e. the backward fall from the living room to the lower level of the porch and down the step onto the cement sidewalk where he hit the back of his head and fractured his skull. Therefore, under the concept of 'accidental means' adopted and reiterated by the Illinois Court, the jury could properly have found that the death of the insured, Oliver Yates, was caused by accidental means and that plaintiff, as beneficiary of the policy, issued by defendant upon Yates' life, was entitled to recover thereunder." In the instant case the death of Rodgers was caused by something unforeseen and unexpected which occurred in the course of an intentional act, i.e., the car leaving the pavement and hitting the guard rail resulting in Rodgers' death. Under the authority of the Yates case an insured, who intentionally sets into motion a series of events that result in his death or through his own negligence contributes to his death, can still have died of accidental injury if the consequences of his action are unforeseen and unexpected.

In the instant case the insured was proceeding rapidly but safely along a straight, level, twenty-foot paved highway free of other traffic. The road curved. He misjudged or did not know the angle of the curve and was unable to keep his automobile on the paved portion of the highway and his car hit a protecting guard rail and he was killed. It does not follow that his death was not accidental or that his death must have been foreseen or expected. There is no evidence from which one would be justified in concluding that the insured expected that he could not negotiate this

curve or that his fast driving would result in his own death and injury to his guest passengers. The fair intendment of his conduct is that what did happen was unforeseen and unexpected by him and his death, under the circumstances, was accidental within the accepted definition of that term and therefore within the provisions of the policy. One may voluntarily and knowingly, with an appreciation of the attending risk, expose himself to danger and be killed, yet his death be accidental. Where a pedestrian or a driver of a vehicle is killed or injured as a result of his miscalculation of distance, speed or his own capabilities, in an attempt to pass in front of an oncoming train, he is still the victim of an accident, even though he knew the train was approaching, failed to heed warning signals and knowingly exposed himself to danger, under circumstances which would have deterred a careful person from attempting to cross, but can it be said that under such circumstances such death or injuries were not accidental?

In this connection it might be noted that the policy issued by appellee did not contain what is sometimes designated as an "exposure-to-danger" provision. Such a clause expressly excepts from the coverage of the policy injury or death if caused by "voluntary exposure to unnecessary danger" or "unnecessary exposure to danger" or "exposure to unnecessary danger" or by "wilful and wanton exposure" or by exposure to "obvious risk of injury or obvious danger" or by exposure to "unnecessary danger, hazard or perilous adventure" (45 C. J. S. Title; Insurance, sec. 774, p. 805). The author of this Article on Insurance in C. J. S. then states (sec. 774, p. 805): "Where, however, the policy does not contain an exposure-to-danger provision, the element of danger is both unimportant and immaterial unless insured intended to produce the very result which occurred." The author of the Article on Insurance in 29 Am. Jur., sec. 944, p. 716, says that

551

voluntary exposure to danger by the holder of an accident insurance policy will not defeat recovery for an injury caused by accidental means, where such an exposure is not an exception in the policy and the insured has no intention of producing the injury received. Both articles cite Richards v. Standard Accident Ins. Co., 58 Utah 622, 200 P. 1017, 17 A.L.R. 1183.

In the Richards case, supra, it appeared that the insured died of a sunstroke and the company defended upon the ground that his death was not the result of an accident within the meaning of the provisions of the policy sued on, but his death was the natural result of his own acts. In affirming a judgment for the plaintiff and after citing and reviewing many cases, the court stated that the authorities generally hold that death or injury do not result from accident or accidental means within the terms of an accident insurance policy where the injury or death is the natural and probable result of the insured's voluntary act unaccompanied by anything unforeseen except the death or injury. The court then said that a well-established exception to that rule is where death or injury is not the natural and probable result of a voluntary and intentional act by the insured or something unforeseen or unexpected or unusual occurs in the act which precedes the injury, then the injury is the result of accidental means and stated that the leading case on the subject is United States Mut. Acc. Ass'n v. Barry, 131 U. S. 100, and quoted therefrom as follows: "The term 'accident' was used in the policy in its ordinary popular sense, as meaning, 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected,' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or expected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which pro-

duces the injury, then the injury has resulted through accidental means." The court then said that the insured might have exercised greater care and that he and his companions were possibly negligent, but held that neither negligence or "voluntary exposure to danger" was a defense which the company could invoke inasmuch as the policy contained no such provision. The court then said: "Unless the deceased intended to produce the very result which occurred, the element of danger is both unimportant and immaterial, because, as said in Interstate Business Men's Accident Association v. Lester, 168 C.C.A. 309, 257 Fed. 225, 'Persons protected by accident insurance may incur consciously hazards which may result in their injury or death, without forfeiting the insurance, unless the policy expressly excepts the hazards.'" See also Fidelity and Casualty Company v. Sittig, 181 Ill. 111, wherein the court affirmed a judgment in favor of the plaintiff upon an accident policy which contained a clause to the effect that the insurance did not cover voluntary exposure to unnecessary danger. The facts in that case disclosed that the insured was a travelling salesman and was attempting to board a suburban Illinois Central train. The evidence disclosed that he had reached the neighborhood of the steps of the station platform just after the train started and had thrown his valise on the platform of the car, seized the railing and attempted to climb on the car, but either lost his hold or fell or was knocked off after being carried some distance and was killed.

In the instant case, Rodgers consciously incurred a known hazard in attempting to negotiate the curve in the highway at the high rate of speed he was travelling. He clearly failed to exercise judgment, was careless, reckless, perhaps foolhardy, but it does not follow that he intended to destroy himself or imperil the lives of his guest passengers. His death was not the rational, natural and probable result of his inten-

553

tional act and, upon the facts as they appear in this record, plaintiff is entitled to recover.

The judgment of the circuit court of Winnebago County is reversed and this cause is remanded with directions to render judgment for the plaintiff.

Reversed and remanded with directions.

EOVALDI and CROW, JJ., concur.