(No. 34068.—

CHARLES TAYLOR *et al., vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.—(BERTHA TAYLOR, Appellee.)

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

228

James S. Baldwin, and John W. Evans, both of Decatur, for appellant.

John F. Regan, Jr., and Francis R. Wiley, both of Decatur, for appellee.

Mr. Justice Bristow delivered the opinion of the court:

The plaintiffs sued in the circuit court of Macon County to recover death benefits allegedly due under an insurance policy. It was stipulated that plaintiff Bertha Taylor was the named beneficiary in the policy. The circuit court denied a recovery, but this was reversed by the Appellate Court. (9 Ill. App.2d 330.) We have allowed the defendant's petition for leave to appeal.

The insured, Frank Owen, was burned to death in a fire which he and two others deliberately set in order to collect fire insurance. The issue is whether there is coverage under the policy, one paragraph of which provides as follows: "Death benefits will be paid if death occurs as result of bodily injury sustained solely through external, violent and accidental means, directly and independently of all other causes." The dispute concerns whether death occurred through "accidental means . . . independently of all other causes."

The parties stipulated as follows regarding the circumstances surrounding the insured's death: "Frank Owen and John Owen (no relation to each other) prior to April

17, 1954, agreed to burn John Owen's residence at 932 N. Lowber St., Decatur, Ill. for the purpose of collecting fire insurance thereon. Between 2:00 and 2:30 A.M. o'clock, April 17, 1954 they and a third man, named Logan Brooks, entered the house for the purpose of carrying out their agreement; that previously John Owen had agreed to give Frank Owen $500.00 of the fire insurance money when collected from the fire insurance company. A gas furnace in the living room was used in heating the home and the pilot light was burning at the time of the explosion. John Owen and Logan Brooks had carried two 5 gallon cans full of gasoline into the house sometime during the evening of April 16, 1954 to be used to burn the house. After entering the house around 2:00 to 2:30 A.M. John Owen, Frank Owen and Logan Brooks poured the 10 gallons of gasoline on the floor and furniture in the house. After spreading it Frank Owen and Logan Brooks went outside the house and Frank Owen went out on the porch and asked John Owen if he could have some of the bed clothing in the bedroom. John Owen said he could and John Owen and Frank Owen reentered the house, which was not on fire. John Owen stopped in the kitchen and Frank Owen went into the bedroom to obtain the bed clothes, and out of John Owen's sight.

"While Frank Owen was in the bedroom obtaining the bed clothes there was an explosion and fire resulting from the act of spreading the gasoline and due to the ignition of the fumes of the gasoline. The house was rapidly consumed by the fire. John Owen got out of the House, but Frank Owen, the insured was caught in the flames, incinerated and died in the bedroom. Frank Owen and Logan Brooks wilfully and maliciously spread the gasoline in furtherance of the plan of setting fire to the building to obtain the insurance thereon."

The defendant seeks to defeat a recovery on two grounds: (1) there was no coverage under the insurance

contract; (2) it would be against the public policy of this State to permit a recovery.

The coverage question, pertaining to whether the insured's death occurred solely through "accidental means * * * independently of all other causes," is discussed at length in the Appellate Court opinion, the conclusions of which we adopt. In Illinois, the courts have adopted a liberal attitude in their interpretation of this common insurance provision. In effect, "accidental means" has been held to be synonymous with "accidental result," and defined as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen. (See, *e.g., Yates* v. *Bankers Life and Casualty Co.* 415 Ill. 16; *Rodgers* v. *Reserve Life Ins Co.* 8 Ill. App.2d 551.) While it is true the parties intended to burn the house, they obviously did not intend the fire to start when it did. To this extent it was "accidental" as the term has heretofore been interpreted.

But even though there is coverage under the terms of the policy, the defendant still insists that it would be against public policy to permit a recovery. This is predicated on the fact that the insured was engaged at the time in an unlawful act.

In considering this issue it must be borne in mind that there is no evidence that the policy was procured in contemplation of the crime or that the beneficiary was guilty of any wrongdoing.

The authorities are divided on the question (see 23 A.L.R.2d 1105), with perhaps a majority favoring the beneficiary. (See Vance on Insurance, sec. 190; Appleman, Insurance Law and Practice, sec. 511; Couch, Cyclopedia of Insurance Law, sec. 1236.) It is a matter of first impression for us.

As noted, there is nothing in this contract of insurance which bars a recovery. The policy does not contain a so-called "violation of law" clause, and if recovery is to be

denied it must be because of some overriding public policy. However, we find no such established policy in Illinois, nor do we believe any should be recognized now. Indeed, in analogous situations this court has allowed a recovery. See, for example, *Grand Legion of Illinois, Select Knights of America* v. *Beaty,* 224 Ill. 346 (insured committed suicide) and *Collins* v. *Metropolitan Life Ins. Co.* 232 Ill. 37 (insured executed for a crime.)

Reasons commonly assigned by those courts which refuse a recovery are that one should not be entitled to profit from his own wrong and that to permit a recovery would encourage crime. We are not persuaded by this reasoning. For in a case like this, where the beneficiary is innocent of any wrongdoing, there is, of course, no violation of the maxim that one should not be benefited by his own wrong. And the notion that a denial of a recovery would serve as a deterrent to crime does not strike us as sound in fact or of such substantial import as to justify relieving the company of its contract obligation.

For the reasons stated, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERSHEY, dissenting:

The trial judge, sitting without a jury, found that the death here did not occur solely through "accidental means * * * independently of all other causes." In my opinion, he was right.

For while the Illinois courts have been "liberal" in construing this common insurance provision, this opinion marks an extension which is both unprecedented and unjustified. It is true that "accidental *means*" have been considered synonymous with "accidental *result*," but it has always been recognized that an effect which is the natural and probable consequence of a deliberate act or course of action cannot be said to be produced by "accidental means." (See,

*e.g., Cory* v. *Woodmen Accident Co.* 333 Ill. 175.) This is, of course, based on the fundamental principle that one is presumed to intend all the natural and probable consequences flowing from his own deliberate act.

The stipulation shows that the insured and his accomplices "entered the house for the purpose of carrying out their agreement." A pilot light was burning in the gas furnace of the living room, and the parties spread ten gallons of gasoline "on the floor and furniture in the house." Judicial notice can be taken of the highly inflammable and explosive qualities of gasoline, especially when spread in proximity to an open flame. (*Gust* v. *Muskegon Co-op Oil Co.* 226 Mich. 532; see also 24 Am. Jur., Gas and Oil, sec. 179.) Given these conditions, an explosion and fire should have been expected at any time. The conclusion is inescapable that the natural and probable consequence of the insured's deliberate misconduct was the explosion and fire in which he died, and it cannot be held that his death was due solely to "accidental means," even though he miscalculated the precise moment when the fire would start.

While the stipulation neither affirms nor negates whether the conspirators knew of the pilot light, all reasonable inferences point to such knowledge. For example, one of them was the owner of the house and used it as his residence. And apart from the general rule that the knowledge of one conspirator is imputed to all, the others surely must have observed the gas furnace in the living room as they helped spread gasoline "on the floor and furniture in the house." Engaged as they were in a highly dangerous and illegal venture, they were certainly put on notice of the possibility of there being an open flame in the gas furnace.

But even if it be assumed that they did not know of the pilot light, still, there is a strong indication that before they left the premises the men had done all that they deemed essential to the starting of the fire. For, as noted,

they entered the house "for the purpose of carrying out their agreement" (*i.e.,* to set the fire) ; and after spreading the gasoline, the ignition of which caused the explosion and fire, stepped outside. There is nothing to suggest they thought anything further had to be done to accomplish their nefarious purpose. The reentry was not connected with the arson, and the fire did in fact occur. The trial court could reasonably conclude that the men believed a fire would commence, though they failed to appreciate how imminent it was, and that the plaintiff failed to sustain her burden of proving that the insured died from an injury caused solely by "accidental means."

Finally, even if we assume that fire at the time was "accidental," still, this "accident" did not cause death "independently of all other causes." If these words in the policy mean anything at all, they must mean if nonaccidental factors have some substantial proximate relationship to the ultimate death, as in this case, the death is not "accidental * * * independently of all other causes."

KLINGBIEL, C.J., and HOUSE, J., concur in the foregoing dissenting opinion.