**William Henry, Administrator of the Estate of Donald A. Henry, Deceased, Plaintiff-Appellee, v. Metropolitan Life Insurance Company, a Corporation, Defendant-Appellant.**

**Gen. No. 50,654.**

First District, First Division.

April 25, 1966.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall, J. Robert Geiman and Peter M. Sfikas, of counsel), for appellant.

John V. Evans, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant insurance company appeals from a $5,000 nonjury judgment against it, under a "death through accidental means" provision of a group policy. Defendant contends that the insured's death resulted from his own aggression and was not accidental within the meaning of the policy.

The decedent, Donald A. Henry, as a United States Post Office employee, was covered under a group life insurance policy issued by defendant, which provided in part:

"(B) Insurance for Death or Dismemberment by Accidental Means:—Upon receipt by the office of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Insurance for Death or Dismemberment by Accidental Means, shall have sustained bodily injuries solely through violent, external and accidental means and within ninety days thereafter shall have suffered any of the losses specified in the Schedule of Losses of this subsection (B) as a direct result of such bodily injuries independently of all other causes, the Office shall pay, subject to the terms and limitations hereof, the amount of insurance specified for such loss in said Schedule, . . . ."

The insured died of a gunshot wound on April 12, 1959. He was 24 years of age and unmarried. Immediately prior to his death, he had been living in a common-law relationship with Hattie Moffitt. He had been a paratrooper in the United States Army, and he was "pretty close" to six feet tall and weighed 175 to 180 pounds. On the day of his death, Donald Henry and Hattie Moffitt went to the apartment of Mr. and Mrs. Horace Young, the parents of Hattie Moffitt. Young was about 60 years old, 5 feet, 8½ inches tall and weighed about 168 pounds. An argument took place between Donald Henry and Hattie Moffitt in the bathroom, and during the course of the argument "he had a knife drawed on her, he was going to cut her throat. . . . He had his hands around her body and a knife in his hand."

From the other room, Horace Young shouted, "No, this don't go in here, this is my apartment, this is my place, I don't want this kind of stuff going on, you have to get

out of here. Why don't you go out and cool yourself and come back after you cool yourself off." Donald Henry then said, "No, I am not going until she goes." Young opened the door, and Henry walked out and said, "Listen, I'm going down stairs and open my car and get my gun and I'm going to come up here and kill everybody in here and you'll be jumping out these windows."

Young testified, "When he [Henry] came back with the sawed off shotgun he said, 'I am killing everybody here.' My wife grabbed him at the door and there was scuffling at the door, you know, she was trying to hold him and he was trying to get back through the door, and my room was kind of off and I had a revolver in my drawer, and I seen them scuffling and she hollered. I got my gun out of the drawer and when I looked around like that, when he throwed her, by being an awkward woman she fell against the window and cut her arm. When she fell he was an open target, I just shot him. . . . He had the gun, just I shot before he could get himself set to shoot me. . . . Well, when he throwed my wife, that throwed the gun towards that direction, that's toward me. [The gun was] pointed right toward me, . . . and he said 'Papa Young, I'm going to kill you.' . . . I shot in a hurry and tried to hit him first."

The court sustained objections to plaintiff's attempts to show that at the coroner's inquest, Horace Young testified that he tried to shoot the gun out of the hand of Donald Henry, and that the death of the insured was accidental.

Corinne Young testified that "when he [Henry] came back . . . the first thing I saw was a shotgun and I just grabbed him and I held onto him. He said, 'Turn me loose, turn me loose.' Then I hollered for my husband. . . . He throwed me over to the side. . . . He throwed [pointed] that shotgun right in his face and said, 'Look out, Pop Young, I will kill you.' . . . Then my husband grabbed . . . his pistol and shot him, that's all I seed,

135

and I ran out in the other bedroom and that was all I had seen then." On cross-examination, she testified, "When he was shot the gun was in his hand."

Henry died immediately. On examination, it was found that the shotgun was not loaded and had not been recently fired. The trial court, in entering judgment, remarked, "I don't think Donald Henry realized that there would be someone who could in fact repel his—any threat of shooting, whether Donald Henry knew that this gun was loaded or not is purely conjectural, no one knows that, he is dead now, he cannot testify, he cannot tell us whether he knew the gun wasn't loaded. . . . I don't think he anticipated that someone would upon his being twisted around shoot him in a very brief moment as he was being twisted from a bedroom . . . . It's because of that that I differentiate between the many cases that I have read on this matter and the particular one before us today."

Defendant's theory is that "since the insured's death resulted from his own criminal assaults, immediately preceding his death, the insured's death resulted from his own aggression and was not accidental within the meaning of the insurance policy."

■■ At the outset, we agree with plaintiff that "it is the province of the trial judge, hearing the case without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and his judgment will not be disturbed unless manifestly contrary to the weight of the evidence," (Hall v. Illinois Nat. Ins. Co., 34 Ill App2d 167, 173, 180 NE2d 695 (1962)), and we have examined this record in the light of this rule.

■■ We also agree that "in Illinois, the courts have adopted a liberal attitude in their interpretation of this common insurance provision. In effect, 'accidental means' has been held to be synonymous with 'accidental result,' and defined as something which happens by chance or fortuitously, without intention or design, and which is

136

unexpected, unusual and unforeseen." Taylor v. John Hancock Ins. Co., 11 Ill2d 227, 230, 142 NE2d 5 (1957).

Plaintiff contends that the group policy "contained no exclusions denying recovery for an assault or for self-exposure to danger, and should be construed strictly against the defendant." Cited in support is Ziolkowski v. Continental Cas. Co., 365 Ill 594, 7 NE2d 451 (1937), where the court said (p 603):

> "In case there is any ambiguity in the policy, the rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder, should be construed most favorably to the insured."

Plaintiff also cites Yates v. Bankers Life & Casualty Co., 415 Ill 16, 111 NE2d 516 (1953), where it is said (p 19):

> "It is evident that to recover upon the insurance policy plaintiff must establish that the death of the insured resulted solely from bodily injury caused by accidental means. The Illinois case law is replete with definitions of what constitutes death through accidental means. . . .
>
> "In Christ v. Pacific Mutual Life Ins. Co. (312 Ill 525) the court reviewed the definitions and applications of the term 'accident' in cases involving recovery under insurance policies, and adopted the interpretation of the United States Supreme Court in United States Mutual Accident Ass'n v. Barry, 131 US 100. Under the rule promulgated in the Barry case, if an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact, occurs, such unintended result is deemed to be caused by accidental means."

137

We note, however, in Yates, it is evident that the facts there are not analogous to the instant case. On p 22, the court said:

"In the instant case, in sharp contrast to both the Cory and Hutton cases, the evidence, both direct and circumstantial, in no way suggests that decedent deliberately provoked a fight, or put Richardson in fear of his life or of his personal safety. Yates had no weapon, he did not advance menacingly or threateningly, nor in any way evidenced a malevolent intent, but merely limped forward in full view, with his hands open and arms extended, and then permitted himself to be easily ejected without fighting back in any manner. Moreover, Richardson testified that he did not intend to hurt Yates in any way, but merely to eject him, since he entered uninvited and did not answer when asked what he wanted. . . .

". . . As in the Barry case, the injuries and death of Yates were caused by something unforeseen and unexpected occurring in the course of an intentional act, i. e., the backward fall from the living room to the lower level of the porch and down the step onto the cement sidewalk, where he hit the back of his head and fractured his skull."

In examining the testimony in this record, we note that on direct examination by plaintiff, Horace Young was asked, "Did you just try to shoot the gun out of his hand?", and Young answered, "No, I tried to keep—I shot him to keep him from shooting me."

 We are not persuaded that Yates and the other authorities of plaintiff are in point as applied to the factual situation presented here. As stated in Wylie v. Union Casualty & Life Ins. Co., 15 Ill App2d 448, 146 NE2d 377 (1957), at p 453:

"Whether or not an assured who is an aggressor should reasonably foresee the consequence of his actions resolves itself into a factual question to be answered in the light of the circumstances of the individual case."

The insured, Henry, used a knife to threaten Hattie Moffitt, and after announcing, "I am going to come up here and kill everybody in the house," he returned with a shotgun, and while struggling with Corinne Young he said, "This whole damn family has got to go." He then pointed the shotgun at Horace Young and said, "Look out, Pop Young, I will kill you." It was at this point that Horace Young fired to stop an aggression, and the result was a natural and probable consequence of the insured's aggressive actions.

In Hutton v. States Acc. Ins. Co., 267 Ill 267, 108 NE 296 (1915), the court said (p 269):

"Where one voluntarily and deliberately engages in a fight or brawl and places another in a position where he, too, must fight to defend himself, it is a natural result, and one known to all sensible men as likely to follow, that one or both of the combatants will receive more or less serious injury. As to whether the assailant or the one assailed would be the more likely to be injured would depend upon the comparative strength and skill of the antagonists as well as upon the fortunes of the combat. . . . Such being true and the assault committed upon Huddlestun being the deliberate and voluntary act of appellee, the injury which he received as a result cannot be said to have been caused by accidental means."

See, also, Espinoza v. Equitable Life Assur. Soc., 345 Ill App 240, 103 NE2d 149 (1951).

139

■ We think the rule to be applied to the facts of this case is set forth in ALR2d, Vol 26, p 402:

"It has generally been held that where an insured, armed with a deadly weapon, makes an attack upon another, his resulting injuries will not be accidental even though the person attacked was unarmed or not known to the insured to be armed, since the resistance which the insured must be charged with expecting will be that which the person attacked is justified in using, rather than that which he has the apparent capacity to make."

■ We conclude the evidence here clearly showed that the insured, Donald Henry, was an aggressor, and that his death was not accidental but the natural and probable consequence of his assault upon Horace Young with a shotgun, reasonably foreseeable by him or by a reasonably prudent person.

For the reasons given, the instant judgment is reversed and judgment is entered here in favor of defendant.

Reversed and judgment entered here.

KLUCZYNSKI, P. J. and BURMAN, J., concur.