Dolores G. Passarella, Individually and as Guardian and Next Best Friend of Raymond Michael Passarella, et al., Minors, Plaintiff-Appellee, v. Board of Trustees of the Firemen's Pension Fund of the Village of Melrose Park, Illinois, Defendant-Appellant.

Gen. No. 51,654.

First District, Fourth Division.

March 5, 1969.

Guerine & Guerine, of Melrose Park (Guy C. Guerine, of counsel), for appellant.

Michael F. Ryan, of Chicago (Richard F. McPartlin, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

This is an appeal by the Board of Trustees of the Firemen's Pension Fund of the Village of Melrose Park, from a judgment order entered in the Circuit Court of Cook County, reversing the action of the said Board of Trustees denying plaintiff's application for a widow's and children's pension, under the provision of the Firemen's Pension Fund Statute, Ill Rev Stats, c 108½, § 4–114 (1965), which pertinent provision reads as follows: "If a fireman dies in the fire service as a result of any illness or accident which had its inception while he was in such service with pay . . . ."

The deceased, Raymond M. Passarella, was a certified full-time fireman in the Village of Melrose Park, Illinois and was a fireman within the meaning of the applicable Firemen's Pension Fund Statute and made the necessary contributions to said Pension Fund as required under the statute.

The record reveals that the deceased came to his death as the result of a bullet wound of the lungs. The bullet was fired from a revolver held in the hand of Mrs. Joan Thompson while deceased was attempting to commit burglary or robbery in her home in Hoffman Estates, Illinois, on January 27, 1964.

Plaintiff relies upon Taylor v. John Hancock Ins. Co., 11 Ill2d 227, 142 NE2d 5 (1957), affirming, 9 Ill App2d 330, 132 NE2d 579 (1956), wherein an insurance policy provided that death benefits would be payable if the death occurred through "accidental means" directly and independently of all other causes. In that case the deceased with others conspired to set fire to a residence to collect fire insurances, but while the deceased was in the house spreading gasoline, there was an explosion and fire due to the premature ignition of the fumes by a pilot light the conspirators overlooked. It was ruled that death ensued as a result of an accident, since "it could not be seriously contended that the deceased intended to burn himself to death. That part was accidental."

449

Defendant's theory is "the deceased fireman, Passarella, was killed while in the act of committing burglary, assault and robbery and that his death was not the result of an accident and therefore is not pensionable, under the provisions of the Firemen's Pension Act."

■ In Illinois, the courts have adopted a liberal attitude in their interpretations of "accident" in resolving litigation for the recovery of insurance proceeds or pensions. In effect "accidental result" and "accidental means" are defined as something which happens by chance or fortuitously, without intention or design and which is unexpected, unusual and unforeseen. Taylor v. John Hancock Ins. Co., supra.

The deceased fireman embarked upon a course of conduct that resulted in attempting to gain entrance to a private dwelling by the device of a ruse. Failing in that, he persisted and accomplished entry by the use of a stolen garage door key that afforded him access to the interior of the dwelling. While armed with a loaded revolver and masked to preclude any possibility of subsequent identification he proceeded up the staircase to the locked bedroom door and with force and violence hurled himself against it and made his entrance in the bedroom where he was shot once and again when he endeavored to disarm Mrs. Thompson while hitting her on the head with his gun.

In Henry v. Metropolitan Life Ins. Co., 70 Ill App2d 132, 217 NE2d 482 (1966), this court reversed a $5,000 judgment against the defendant, under a "death through accidental means" provision of a group policy. The decedent in that case in the company of his common-law wife, Hattie Moffitt, visited her parents, Mr. and Mrs. Horace Young, where they engaged in an argument and decedent drew a knife and was going to cut Miss Moffitt's throat. Mr. Young ordered the decedent to leave the home and "go out and cool yourself and come back after you cool yourself off." The decedent before de-

450

parting said "Listen, I'm going downstairs and open my car and get my gun and I'm going to come up here and kill everybody in here and you'll be jumping out these windows." The decedent promptly returned armed with a sawed-off shotgun (which later was discovered to be unloaded) and said "I am killing everybody here," at which moment Mrs. Young grabbed him at the door and there was scuffling. Mr. Young got his gun out of a drawer and observed that Mrs. Young was thrown aside by the decedent against a window causing her to cut her arm. At this moment, Mr. Young testified, "When she fell he was an open target, I just shot him . . . . He had the gun, just I shot before he could get himself set to shoot me. . . . [The gun was] pointed right toward me, . . . and he said 'Papa Young, I'm going to kill you.' . . . I shot in a hurry and tried to hit him first."

The Henry case and the case at bar are analogous in that both decedents were engaged in committing crimes, in both instances felonies. Each decedent was armed and each placed their respective adversaries in the legal and factual position of defending to the point that the taking of the decedents' lives was justified. Criminal Code of 1961, Ill Rev Stats, c 38, § 7-1 (1965).*

When the decedent broke through the locked bedroom door armed with a gun and his face masked, Mrs. Thompson fired her first shot. She fired her second shot after the decedent had thrown her to the floor and was

---

* 7-1. Use of Force in Defense of Person

A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony. 1961, July 28, Laws 1961, p 1983, § 7-1.

striking her about a dozen times on the head with his gun. The acts of Mrs. Thompson were a natural and probable consequence of the decedent's conduct.

█ The rule adopted by this court in Henry v. Metropolitan Life Ins. Co., supra at page 140, is applicable to the facts in this case:

> "We think the rule to be applied to the facts of this case is set forth in ALR2d, Vol 26, p 402:

> "It has generally been held that where an insured, armed with a deadly weapon, makes an attack upon another, his resulting injuries will not be accidental even though the person attacked was unarmed or not known to the insured to be armed, since the resistance which the insured must be charged with expecting will be that which the person attacked is justified in using, rather than that which he has the apparent capacity to make."

We conclude from the record that the decedent's death was not accidental, but an obvious natural and probable consequence of his conduct that was reasonably foreseeable. For the reasons given, the instant judgment is reversed.

Judgment reversed.

DRUCKER, P. J. and ENGLISH, J., concur.