**Ida B. HARRINGTON, Plaintiff,**

v.

**NEW ENGLAND LIFE INSURANCE COMPANY, Defendant.**

**No. 84 C 6669.**

United States District Court, N.D. Illinois, E.D.

Feb. 17, 1988.

Donald A. Shapiro, Chicago, Ill., for plaintiff.

J. Robert Geiman, Peterson Ross Schleorb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This $15,000 insurance contract case was reassigned to this Court from the calendar of the Honorable Judge George N. Leighton by order of the Executive Committee on December 1, 1987. Prior to its transfer, Judge Leighton had denied cross-motions for summary judgment. During a status hearing on December 15, 1987, both parties requested that this Court reconsider the previous denial of cross-motions for summary judgment as both parties believe this case should be decided on a motion for

summary judgment. Although we hesitate to reconsider the ruling of another judge merely because the case has been newly reassigned, we agree with the parties that this case can be decided upon a motion for summary judgment.[1] Accordingly, for the reasons set forth below we grant plaintiff Ida B. Harrington's motion for summary judgment.

## I

The following facts are taken from the agreed statement of facts and from the complaint. In the early morning hours of August 6, 1983, the insured Ricardo Edmonds was observed by police officers sitting in a car with a woman. When the police car approached the vehicle, Edmonds fled in the car with the police in pursuit. A high-speed chase ensued. Edmonds crossed a set of railroad tracks, his car catapulted into a parked car and he was killed. The woman in the car survived the accident and testified that she had been abducted by Edmonds at gunpoint, raped and sexually assaulted.

## II

Summary judgment is appropriate only where the moving party demonstrates that no genuine issue of material fact exists and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The deceased, Edmonds, designated his mother, plaintiff Harrington, as the beneficiary of his group life insurance policy with defendant New England Life Insurance Co. ("New England"). The policy provided for a payment of $15,000 upon the death of Edmonds and an additional $15,000 if the death was the "result of external, violent and accidental bodily injuries, directly and independently of all other causes...." Although the policy also contains a clause which states that no amount shall be paid for any loss resulting from "SUICIDE OR INTENTIONALLY SELF–INFLICTED INJURY," defendant New England does not claim the benefit of that exclusion and has paid Harrington the basic death benefit of $15,000. Rather, New England contends that Edmonds' death was not an accident within the terms of the policy and that it therefore need not pay the additional $15,000 benefit for an accidental death.

In support of its motion for summary judgment, New England cites a line of Illinois[2] cases which hold that summary judgment as a matter of law may be granted in favor of an insurance company where the insured died as a result of an injury inflicted upon him by another when (1) the insured knew he was attacking an armed person or (2) where like means of attack and counter-attack are employed. *Hotwick v. Equitable Life Assurance Society*, 5 Ill. App.3d 327, 282 N.E.2d 222 (4th Dist.1972); *Passarella v. Board of Trustees*, 106 Ill. App.2d 448, 245 N.E.2d 913 (1st Dist.1969); *Henry v. Metropolitan Life Insurance Company*, 70 Ill.App.2d 132, 217 N.E.2d 482 (1st Dist.1966). The theory supporting this line of cases is that such a death cannot as a matter of law be considered an accident because an assault victim's actions in self-defense are the natural and probable consequences of the insured's assault. *See, e.g., Henry*, 70 Ill.App.2d at 140, 217 N.E.2d at 485. However, in this case the insured did not die as a result of an injury inflicted upon him by his victim. He died as a result of injuries suffered when his car collided with a parked car as he fled the

---

1. Because the previous denial of the cross-motions for summary judgment was an interlocutory order, we are not bound by any law of the case doctrine. 1B J. Moore, *Moore's Federal Practice* § 0.404[4.–1] (1984). Nor are we bound by the decision merely because the case was transferred from another judge of the Northern District of Illinois. The principle that we may reconsider an interlocutory decision at any time applies with equal vigor to a case transferred from one judge to another on the same court. *Id.* at § 0.404[4.–2].

2. Both parties assume Illinois law applies to this dispute. Because there appears to be no other state which has any contact with this dispute, we see no reason to contradict the parties' assumption.

police. If the facts indicated that the victim of the sexual assault struggled with the insured during the high speed chase, then there might be a question raised that his injuries were caused by the assault. This is not the present situation. There is no indication that the victim's acts of self-defense caused the accident. Accordingly, we do not find this line of cases at all relevant.

As gruesome, heinous and despicable as the insured's actions preceding his death were, unless his death resulted from the victim's actions of self-defense, his actions preceding his death are not relevant to our inquiry. This case is about a contract dispute between an innocent beneficiary and an insurance company—an insurance company which could easily have included a clause similar to the clause in one of the cases it cited that prohibited recovery where the insured's death was caused directly or indirectly, wholly or partly, by "participation in or consequence of having participated in the committing of a felony." *Espinoza v. Equitable Life Assurance Society*, 345 Ill.App. 240, 242, 103 N.E.2d 149, 150 (1st Dist.1951). If this were the clause at issue in the present case, we would have no problem finding as a matter of law for the insurance company. For whatever reason, however, New England chose not to include such a clause. Nor will we read in such a clause as this exact argument was soundly rejected by the Supreme Court of Illinois:

> Reasons commonly assigned by those courts which refuse recovery [on the grounds the deceased was violating the law when he died] are that one should not be entitled to profit from his own wrong and that to permit a recovery would encourage crime. We are not persuaded by this reasoning. For in a case like this, where the beneficiary is innocent of any wrongdoing, there is, of course, no violation of the maxim that one should not be benefitted by his own wrong. And the notion that a denial of a recovery would serve as a deterrent to crime does not strike us as sound in fact or of such substantial import to justify relieving the company of its *contract obligation*.

*Taylor v. John Hancock Mutual Life Insurance*, 11 Ill.2d 227, 231, 142 N.E.2d 5, 7 (1957) (emphasis added). This case is not about remedying the insured's horrendous wrong inflicted upon his rape victim. She will in no way benefit from whatever action we take today. The sole issue is whether an insurance company should be relieved of its legal obligation to an innocent beneficiary solely because of despicable actions of the insured absent a provision of the policy providing such relief. We think not.

In support of her motion for summary judgment, Harrington cites two cases which we find are dispositive of this motion. In *Taylor v. John Hancock*, 11 Ill.2d at 231, 142 N.E.2d at 8, the Supreme Court of Illinois ruled as a matter of law in favor of a life insurance beneficiary. In *Taylor*, the insured, Frank Owen, was burned to death in a fire which he and two others deliberately set in order to collect fire insurance. The stipulated facts indicated that he and the others wilfully and maliciously spread gasoline around the home in furtherance of their plan to set fire to that building in order to obtain the insurance. The insured was incinerated, however, when a pilot light in the gas furnace ignited the gasoline before the insured had left the house. The Supreme Court of Illinois held that the insured's death was an accident as a matter of law because "[w]hile it is true the parties intended to burn the house, they obviously did not intend the fire to start when it did. To this extent it was 'accidental' as the term has heretofore been interpreted." *Taylor*, 11 Ill.2d at 230, 142 N.E.2d at 6. The other case Harrington cites was a lower court decision decided the year before *Taylor*, but was cited approvingly by *Taylor*, *Rodgers v. Reserve Life Insurance Co.*, 8 Ill.App.2d 542, 132 N.E.2d 692 (2d Dist.1956). In *Rodgers*, the insured consciously incurred a known hazard in attempting to negotiate a curve in a highway at a speed of 100 miles per hour. The court stated that while the insured "clearly failed to exercise judgment, was careless, reckless, perhaps foolhardy ... it does not follow that he intended to destroy

himself or imperil the lives of his guest passengers. His death was not the rational, natural and probable result of his intentional act ..." and it was therefore as a matter of law accidental within the meaning of the life insurance contract. *Rodgers*, 8 Ill.App.2d at 553–54, 132 N.E.2d at 697. We find that *Taylor* and *Rodgers* are dispositive of this case. There is no evidence from which anyone could infer that the insured intended to kill himself when he fled the police. He may have been incredibly reckless and foolhardy, but there is not any evidence that he intended to kill himself. Perhaps if we forced the victim to relive that horrible and terrifying evening on the stand, she may then indicate that some action she took in self-defense caused the insured to crash, or perhaps that he indicated that he wanted to die rather than be caught. However, one cannot avoid summary judgment on speculation and conjecture. Defendant New England has raised no evidence which would even hint at such revelations. Accordingly, we find that, although the deceased intended to escape the police by speeding away in his car, there is no evidence that he intended to kill himself as a result of his actions, and therefore his death was accidental within the meaning of the life insurance contract at issue. His death was not the rational and probable consequence of his intended act of flight, "[i]t was rather something unforeseen and unexpected occurring in the course of an intentional act." *McAllister v. Hawkeye–Security Insurance Co.*, 68 Ill.App.2d 222, 227, 215 N.E.2d 477, 480 (2d Dist.1966). Inherent in Illinois case law on this issue is the notion that the test of foreseeability in the interpretation of insurance policies differs from that in tort or criminal law. *Russell v. Metropolitan Life Insurance*, 108 Ill.App.3d 417, 422–23, 64 Ill.Dec. 160, 162, 439 N.E.2d 89, 91 (4th Dist.1982). In *Taylor*, the death of the arsonist would have been found to have been foreseeable had a suit in tort arisen from that episode. Similarly, the death of an accomplice would have been foreseeable had the arsonist survived and been charged with involuntary manslaughter. *Id.* Accordingly, because New England has failed

to raise any facts which indicate that the deceased intended to kill himself as a result of his high speed flight from police, we grant summary judgment in favor of plaintiff Harrington.

---

In conclusion, upon reconsideration we grant plaintiff Harrington's motion for summary judgment because we find her son's death was accidental as a matter of law within the meaning of the insurance policy, and we deny New England's motion for summary judgment. It is so ordered.