Ida B. HARRINGTON,
Plaintiff–Appellee,

v.

NEW ENGLAND MUTUAL LIFE
INSURANCE COMPANY,
Defendant–Appellant.

Nos. 88–1473, 88–2961.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1989.

Decided April 27, 1989.

J. Robert Geiman, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant-appellant.

David A. Statham, Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellee Ida B. Harrington is the beneficiary under an employee life insurance policy issued by the defendant-appellant New England Mutual Life Insurance Company (New England). Ricardo

Edmunds, Harrington's son, was the named insured under the policy. The policy provided for a $15,000 basic death benefit with an additional $15,000 benefit in case of accidental death. New England paid the $15,000 basic death benefit to Harrington upon Edmunds' death, but refused to pay the additional accidental death benefit. Harrington filed suit seeking recovery of the accidental death benefit, as well as attorney's fees and a statutory penalty for "vexatious" and "unreasonable" denial of insurance benefits. *See* Ill.Ann.Stat. ch. 73, ¶ 767 (Smith–Hurd Supp.1988). New England countered with the affirmative defense that Edmunds' death was not "accidental," and therefore New England was liable neither under the policy nor under Illinois law for the sums claimed by Harrington. Both sides filed motions for summary judgment and, on stipulated facts, the court granted summary judgment to Harrington and denied summary judgment to New England, 684 F.Supp. 174. New England appeals.

### FACTS

On August 6, 1983 Ricardo Edmunds kidnapped a woman at gunpoint, forced her into his car, and drove to a darkened parking lot where he raped and sodomized her. Upon observing a Chicago police squad car, Edmunds pushed his victim to the floor of the car, threatened to kill her because she knew too much, and drove out of the parking lot. The police pursued, Edmunds' vehicle appearing "suspicious" to them. As the Edmunds' car picked up speed the officers continued pursuit; now with siren, lights and spotlight trained on the fleeing vehicle. Edmunds accelerated to over 70 miles per hour during this pursuit, through an area with a posted 30 mile-per-hour speed limit. Edmunds drove his car across a set of railroad tracks, which at 70 miles per hour engendered a "ski jump" effect, catapulting the car through the air and into a parked car. The rape victim survived; Edmunds did not. At the scene the police

extracted a loaded .32 caliber revolver, a live victim and a dead Edmunds from the car. The victim immediately reported Edmunds' other personal crimes to the police.

New England paid Harrington the basic $15,000 death benefit under the life insurance policy but refused to pay her the additional $15,000 accidental death benefit on the theory that Edmunds' death was not accidental. District Court Judge Marvin E. Aspen, in a memorandum opinion, disagreed with New England's position, found that Edmunds' death was "accidental" under Illinois law, and ordered New England to pay Harrington the accidental death benefit. It is from this finding and order that New England appeals.

We affirm on the basis of Judge Aspen's memorandum decision, which we adopt and incorporate as part of this decision, adding only some additional comments in conclusion. Judge Aspen wrote as follows:

"In support of its motion for summary judgment, New England cites a line of Illinois [1] cases which hold that summary judgment as a matter of law may be granted in favor of an insurance company where the insured died as a result of an injury inflicted upon him by another when (1) the insured knew he was attacking an armed person or (2) where like means of attack and counter-attack are employed. *Hotwick v. Equitable Life Assurance Society*, 5 Ill. App.3d 327, 282 N.E.2d 222 (4th Dist.1972); *Passarella v. Board of Trustees*, 106 Ill. App.2d 448, 245 N.E.2d 913 (1st Dist.1969); *Henry v. Metropolitan Life Insurance Company*, 70 Ill.App.2d 132, 217 N.E.2d 482 (1st Dist.1966). The theory supporting this line of cases is that such a death cannot as a matter of law be considered an accident because an assault victim's actions in self-defense are the natural and probable consequences of the insured's assault. *See, e.g., Henry*, 70 Ill.App.2d at 140, 217 N.E.2d at 485. However, in this case the insured did not die as a result of an injury inflicted upon him by his victim. He died

---

1. Both parties assume Illinois law applies to this dispute. Because there appears to be no other state which has any contact with this dispute, we see no reason to contradict the parties' as-

sumption. [This footnote appeared as footnote 2 in Judge Aspen's Memorandum Opinion and Order.]

as a result of injuries suffered when his car collided with a parked car as he fled the police. If the facts indicated that the victim of the sexual assault struggled with the insured during the high speed chase, then there might be a question raised that his injuries were caused by the assault. This is not the present situation. There is no indication that the victim's acts of self-defense caused the accident. Accordingly, we do not find this line of cases at all relevant.

"As gruesome, heinous and despicable as the insured's actions preceding his death were, unless his death resulted from the victim's actions of self-defense, his actions preceding his death are not relevant to our inquiry. This case is about a contract dispute between an innocent beneficiary and an insurance company—an insurance company which could easily have included a clause similar to the clause in one of the cases it cited that prohibited recovery where the insured's death was caused directly or indirectly, wholly or partly, by 'participation in or consequent of having participated in the committing of a felony.' *Espinoza v. Equitable Life Assurance Society*, 345 Ill.App. 240, 242, 103 N.E.2d 149, 150 (1st Dist.1951). If this were the clause at issue in the present case, we would have no problem finding as a matter of law for the insurance company. For whatever reason, however, New England chose not to include such a clause. Nor will we read in such a clause as this exact argument was soundly rejected by the Supreme Court of Illinois:

> Reasons commonly assigned by those courts which refuse recovery [on the grounds the deceased was violating the law when he died] are that one should not be entitled to profit from his own wrong and that to permit a recovery would encourage crime. We are not persuaded by this reasoning. For in a case like this, where the beneficiary is innocent of any wrong-doing, there is, of course, no violation of the maxim that one should not be benefitted by his own wrong. And the notion that a denial of a recovery would serve as a deterrent to crime does not strike us as sound in fact

or of substantial import to justify relieving the company of its *contract obligation.*

*Taylor v. John Hancock Mutual Life Insurance*, 11 Ill.2d 227, 231, 142 N.E.2d 5, 7 (1957) (emphasis added). This case is not about remedying the insured's horrendous wrong inflicted upon his rape victim. She will in no way benefit from whatever action we take today. The sole issue is whether an insurance company should be relieved of its legal obligation to an innocent beneficiary solely because of despicable actions of the insured absent a provision of the policy providing such relief. We think not.

"In support of her motion for summary judgment, Harrington cites two cases which we find are dispositive of this motion. In *Taylor v. John Hancock*, 11 Ill.2d at 231, 142 N.E.2d at 8, the Supreme Court of Illinois ruled as a matter of law in favor of a life insurance beneficiary. In *Taylor*, the insured, Frank Owen, was burned to death in a fire which he and two others deliberately set in order to collect fire insurance. The stipulated facts indicated that he and the others wilfully and maliciously spread gasoline around the home in furtherance of their plan to set fire to that building in order to obtain the insurance. The insured was incinerated, however, when a pilot light in the gas furnace ignited the gasoline before the insured had left the house. The Supreme Court of Illinois held that the insured's death was an accident as a matter of law because '[w]hile it is true the parties intended to burn the house, they obviously did not intend the fire to start when it did. To this extent it was "accidental" as the term has heretofore been interpreted.' *Taylor*, 11 Ill.2d at 230, 142 N.E.2d at 6. The other case Harrington cites was a lower court decision decided the year before *Taylor*, but was cited approvingly by *Taylor*, *Rodgers v. Reserve Life Insurance Co.*, 8 Ill.App.2d 542, 132 N.E.2d 692 (2d Dist.1956). In *Rodgers*, the insured consciously incurred a known hazard in attempting to negotiate a curve in a highway at a speed of 100 miles per hour. The court stated that while the insured 'clearly failed to exercise judg-

ment, was careless, reckless, perhaps foolhardy ... it does not follow that he intended to destroy himself or imperil the lives of his guest passengers. His death was not the rational, natural and probable result of his intentional act ...' and it was therefore as a matter of law accidental within the meaning of the life insurance contract. *Rodgers,* 8 Ill.App.2d at 553–54, 132 N.E.2d at 697. We find that *Taylor* and *Rodgers* are dispositive of this case. There is no evidence from which anyone could infer that the insured intended to kill himself when he fled the police. He may have been incredibly reckless and foolhardy, but there is not any evidence that he intended to kill himself. Perhaps if we forced the victim to relive that horrible and terrifying evening on the stand, she may then indicate that some action she took in self-defense caused the insured to crash, or perhaps that he indicated that he wanted to die rather than be caught. However, one cannot avoid summary judgment on speculation and conjecture. Defendant New England has raised no evidence which would even hint at such revelations. Accordingly, we find that, although the deceased intended to escape the police by speeding away in his car, there is no evidence that he intended to kill himself as a result of his actions, and therefore his death was accidental within the meaning of the life insurance contract at issue. His death was not the rational and probable consequence of his intended act of flight, '[i]t was rather something unforeseen and unexpected occurring in the course of an intentional act.' *McAllister v. Hawkeye–Security Insurance Co.,* 68 Ill.App.2d 222, 227, 215 N.E.2d 477, 480 (2d Dist.1966). Inherent in Illinois case law on this issue is the notion that the test of foreseeability in the interpretation of insurance policies differs from that in tort or criminal law. *Russell v. Metropolitan Life Insurance,* 108 Ill.App.3d 417, 422–23, 64 Ill.Dec. 160, 162, 439 N.E.2d 89, 91 (4th Dist.1982). In *Taylor,* the death of the arsonist would have been found to have been foreseeable had a suit in tort arisen from that episode. Similarly, the death of an accomplice would have been foreseeable had the arsonist survived and been charged

with involuntary manslaughter. *Id.* Accordingly, because New England has failed to raise any facts which indicate that the deceased intended to kill himself as a result of his high speed flight from police, we grant summary judgment in favor of plaintiff Harrington."

District Court Memorandum Opinion and Order at 3–7.

We add only a few additional comments. Both parties rely on *Taylor v. John Hancock Mutual Life Ins. Co.,* 11 Ill.2d 227, 142 N.E.2d 5 (1957). New England argues that the Illinois Supreme Court has defined the term "accident" as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen. *See Taylor,* 11 Ill.2d at 230, 142 N.E.2d at 6. New England claims that Judge Aspen failed to properly apply Illinois' foreseeability standard. New England contends that under the Illinois standard "the insured's conduct in the instant case can hardly be considered unexpected, unusual or unforeseen." We note, however, that the insured's death in *Taylor* was considered an accident even though his conduct as an arsonist in attempting to burn down a house was obviously dangerous. There was risk, but death was not foreseeable.

New England further argues that the Illinois foreseeability test is clearly an objective standard as set forth in *Marsh v. Metropolitan Life Ins. Co.,* 70 Ill.App.3d 790, 27 Ill.Dec. 158, 388 N.E.2d 1121 (2d Dist.1979). In *Marsh* the insured's death resulted from an unintended overdose of heroin. In interpreting the insurance policy the court regarded the insured's death to be accidental as a matter of law. The death was held to be accidental even though the means of destruction, the injection of heroin, was intentional. In the present case, as in *Marsh,* the decedent was intentionally engaging in potentially destructive and illegal conduct, but his resulting death was unexpected and unintended. Edmunds was not in the exercise of reasonable care for his own safety, and the accident may have been foreseeable for the purpose of determining tort or criminal

liability, but in Illinois that is not the test of foreseeability when interpreting accidental death coverage under an insurance policy. *Marsh*, 70 Ill.App.3d at 792, 27 Ill.Dec. at 160–61, 388 N.E.2d at 1123–24.

Judge Aspen, contrary to New England's argument, did not replace the objective foreseeability standard with a highly subjective analysis which focused only on the insured's intent. Fast driving may be reckless and dangerous and is all too commonly indulged in, but death is not normally intended nor can death be said to be "likely to follow as a natural result of one's conduct." *Marsh*, 70 Ill.App.3d at 792, 27 Ill.Dec. at 160, 388 N.E.2d at 1123. It was all a bad situation, but it cannot be said, as New England argues, that Edmunds' death was no accident, but "bordered on the inevitable."

If New England wishes to avoid liability in similar circumstances, it needs to rewrite its policy coverage for accidental death.

AFFIRMED.