Morris Goldfarb and Joseph Goldfarb, Trading as Worth's Hollywood, Appellees, v. Maryland Casualty Company, Appellant.

Appeal by defendant from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding. Heard in this court at the May term, 1941. Opinion filed October 27, 1941.

POPE & DRIEMEYER, of East St. Louis, for appellant.

SAUL E. COHN, of East St. Louis, for appellees.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an appeal from a judgment of the city court of the city of East St. Louis, in the sum of $580.80, against the Maryland Casualty Company, an insurance corporation, appellant (hereinafter designated as the defendant) and in favor of Morris Goldfarb and Joseph Goldfarb, doing business as Worth's Hollywood, appellees (hereinafter designated as plaintiffs) in a suit brought upon a water damage insurance policy, to recover damages for a loss alleged to have been sustained by plaintiffs. The case was tried before the court without a jury.

The risk insured against, as provided in the policy, and alleged in the complaint, covered, . . . direct loss and damage caused solely by . . . rain . . . admitted directly to the interior of the building through . . . defective doors . . . except as herein provided . . . . Complaint further stated that on June 11, 1940 while the policy was in force, certain goods belonging to plaintiffs were damaged by rain water to the extent of $1,000; that plaintiffs had complied with all of the provisions of the policy, and that defendant had refused to pay for the damage.

Defendant answered, admitting the issuance and existence of the policy, and the quoted provision, but denying the remaining allegations of the complaint. The answer incorporated a copy of the policy and pleaded specifically the following provisions, "This company shall not be liable for loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, foundations, lowest basement floors, sidewalks or sidewalk lights;

or (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; . . . , or (g) by neglect of the insured to use all reasonable means to save and preserve the property at and after a 'Water Damage.' Wherever in this policy the term 'Water Damage' occurs, it shall be held to mean the accidental discharge, leakage or overflow of water, steam, rain or snow from systems, tanks, appliances and parts of buildings, insured against as sources of loss, resulting in loss or damage to property described herein, whether the 'Water Damage' originates in the portion of the building occupied by the insured or not.''

The first paragraph of the above appears in the policy under the head of ''Hazards not covered.'' The answer alleged that the loss complained of resulted from causes specifically excluded under the quoted terms of the policy.

Plaintiffs operated a clothing store in East St. Louis. In addition to this store on the ground floor, they occupied the basement beneath it, and the adjoining basement. In this basement they had a quantity of merchandise, some of which was stored and some on display. There were no windows in the basement. One stairway led up to the store on the ground floor, and there was a door opening toward the alley in the rear. This door on June 11, 1940 had a crack of about one inch between the bottom of the door and the threshold. The store above this basement room extended some distance out beyond the foundation wall, so that the door would be sheltered from any rain. There is some evidence, however, to the effect that there was an open space, between the two buildings in the back, through a fire escape, where rain might fall more directly.

On June 11, 1940, there was a terrific rainstorm in East St. Louis, lasting about twenty-five minutes. The witnesses for the plaintiff were in this basement at the

time and stated that the "water gushed in like a waterfall." It was at this time, that certain goods and merchandise of plaintiffs were damaged by water. The theory of the plaintiffs is that the rain coming between the two buildings, and through the fire escape, fell directly before and through the defective door of plaintiffs' premises, and thus the damage resulted. The contention of defendant is that rain was not admitted directly to the interior of the building through the defective door and that damage was caused by what they designate as surface water, which was an excepted risk under the policy.

There is no evidence that there was any water lying on the ground, in the areaway back of the defective door. It is difficult to say where the line of demarcation lies between rain and surface water, that is, when rain ceases to be such and becomes surface water. Where certain risks are excepted, the burden is upon the insurance company to show that the loss was within the exceptions. *Jordan v. Iowa Mutual Tornado Ins. Co.*, 151 Iowa 73, 130 N. W. 177; *Fidelity & Casualty Co. v. Sittig*, 181 Ill. 111, 54 N. E. 903.

We are of the opinion that the question as to whether the damage was caused by rain or by surface water was a question of fact to be determined by the judge, sitting as a trier of fact, in the absence of a jury. In an action on an accident insurance policy, the question as to whether insured died from carbon monoxide gas poisoning or from a combination of the gas poisoning with heart disease, was held under conflicting evidence to be a question for the jury. *Cantrall v. Great American Casualty Co.*, 256 Ill. App. 47. Where there was both a fire and an explosion, the question of which preceded was held to be a question of fact for the jury. *German American Ins. Co. v. Hyman*, 42 Colo. 156, 94 Pac. 27. Whether a fire in the insured building caused the explosion has been held to be a question of fact for the jury. *New*

*Hampshire Fire Ins. Co. v. Rupard,* 187 Ky. 671, 220 S. W. 538.

Defendant contends that there is no liability and that the court erred in rendering judgment for the plaintiffs, because there was no evidence that any rain was "admitted directly" through the crack under the door. The witness, Ruth Bruner, testified for plaintiffs that the water gushed in like a waterfall, and filled the floor with water, that the water was coming in from the rain. Grace O. Mangum, on behalf of plaintiffs testified that there was a cloudburst, and that water came in from the rear door, through an opening between the door and the threshold. Joseph Goldfarb, one of the owners, testified that there was an open space in the area in the back, because of the ladder fire escape of about eight or ten inches and that if the water came down there, it would drop to the ground and run in the door.

The only evidence offered by defendant, in addition to certain photographs admitted in evidence, was that of an adjuster, who examined the basement four days after the rainstorm. The word "direct" as used in the insurance policy in the instant case, means merely "immediate" or "proximate" as distinguished from "remote." *Western Assur. Co. v. Hann,* 201 Ala. 376, 78 So. 232. So that the question as to whether any rain was "admitted directly" was, in the final analysis, a question of proximate cause, and a question of fact for the court to determine. The finding of the trial court on the controverted facts is entitled to the same weight as the verdict of a jury. *Moore v. David J. Molloy Co.,* 222 Ill. App. 295. The judgment of that court, which saw the witnesses and heard them testify is conclusive on all questions of fact, if not manifestly against the weight of the evidence. *Paterson v. Whitney,* 67 Ill. App. 290; *Shapleigh Hardware Co. v. Enterprise Foundry Co.,* 305 Ill. App. 180, 27 N. E.

(2d) 1012. We do not believe that the finding of the court in this case was contrary to the manifest weight of the evidence. We find no reversible error in the matter of the amount of damages nor of the manner of ascertaining same.

For the reasons above set forth the judgment of the trial court will be affirmed.

*Affirmed.*