## LANG v. F. G. ARWOOD & CO., Inc.

No. 733.

Municipal Court of Appeals for the District of Columbia.

April 4, 1949.

Charles J. King, of Washington, D. C., for appellant.

Ralph L. Bailey, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The parties to this action entered into a contract by the terms of which appellee, who was defendant below, agreed to furnish "full maintenance service" for a passenger elevator in a rooming house operated by appellant, plaintiff below. A fire destroyed some parts of the controller

equipment for the elevator but appellee refused to make the necessary repairs or to replace the controller on the ground that it was relieved of its responsibility under one of the clauses in the contract. Appellant sued for damages for breach of contract. The trial court gave judgment for defendant and this appeal followed.

By the terms of the contract defendant agreed to "completely maintain the entire elevator equipment" as described in the agreement. The contract also provided that defendant would supply trained and qualified employees "to keep your elevators in proper repair and adjustment and they will use all reasonable care to maintain the equipment in proper and safe condition, at all times." It was further provided that defendant would "regularly and systematically examine, adjust, lubricate as required, and as conditions warrant, repair or replace" an itemized list of parts which included "all controller parts," and "all electrical parts." The exemption-from-liability clause upon which the controversy turned provided as follows:

"It is mutually understood that we [defendant] are not required to make renewals or repairs necessitated by reason of negligence or misuse of the elevator machinery, apparatus or car, or rendered necessary due to any other cause beyond our control."

Plaintiff in his complaint pleaded the contract, alleged that certain elevator parts had been damaged by fire, making its operation impossible and then alleged the refusal of defendant to repair the damaged parts or to replace them. Defendant filed an answer affirmatively pleading the exemption-from-liability clause and alleging that if the elevator was damaged by fire it was through the negligence or misuse of the elevator machinery by the plaintiff or his agents or that the cause of the damage was beyond the control of defendant.

After proving the contract and the refusal of defendant to repair or replace the burned out parts, plaintiff then introduced evidence showing that the fire broke out in the control room of the elevator; that immediately after the fire was extinguished smoke was coming from the panel board and that the wires were burned to a crisp where they branched out from the board; that the control room was enclosed on the first floor of the building and was not used for any other purpose except to house the controls operating the elevator; that the door to the control room was closed at the time the fire was discovered; and that the necessary repairs and replacements would cost approximately $3,000. The fire was discovered by a tenant in the building who notified a building employee. After the employee had pulled the switch connecting the electricity the fire was promptly extinguished by the employee and the tenant with a fire extinguisher. Defendant was notified of the fire the same day it occurred.

One of defendant's employees who had been in the elevator construction business for ten years testified that a short circuit might have caused the fire. However, the same witness testified that if there had been a short circuit the fuses would have been blown out and that when he examined the equipment shortly after the fire he found the fuses intact. He did not produce the fuses and testified he did not know what had become of them. Another of defendant's employees testified that the fire could have been caused in many ways not connected with the wiring of the elevator but he did not specify such other possibilities. A fire department official report gave the cause and origin of the fire as "app. [apparent] short circuit in Control Board." The fire marshal who made this report said it was based on information from the defendant company. There was no other explanation of the origin of the fire by witnesses for either party.

Following the fire there was an inspection by a District of Columbia inspector who notified plaintiff that the elevator was "in need of the following repairs: Renew the controller and all wiring going from the controller to the hoistway, selector and motor. Rewind the armature and motor. Provide proper size wire in the conduit going from the main line switch to the controller."

The trial court, in a memorandum opinion, held that the origin of the fire was "more peculiarly" within the knowledge of the plaintiff than of the defendant, that where a fact is peculiarly within the knowl-

edge of one of the parties the burden with respect thereto shifts to him and that since there was a complete failure of explanation with respect to the origin of the fire plaintiff had failed to carry the burden of proof, and hence that defendant was entitled to judgment.

█ . We find no evidence in the record to support the finding that the origin of the fire was "more peculiarly" within the knowledge of the plaintiff than of the defendant. The purpose of the contract was to have defendant maintain the equipment in proper and safe condition, including its inspection by skilled employees. There was no evidence that plaintiff or his employees had any duty with respect to inspection or maintenance of the elevator or any of its appurtenances or had any knowledge of elevators or electricity. It seems clear, therefore, that if there was anything wrong with the appliances prior to the fire which was discoverable it was the duty of defendant, not plaintiff, to have discovered and remedied such condition. Under no aspect of the evidence as we understand it was plaintiff in a better position than defendant to know the cause of the fire. Hence there was no occasion to apply against plaintiff the rule as to burden of proof mentioned by the trial court. "The general rule that the burden of proof in its true sense remains throughout the trial upon the party who affirms is not to be limited in application where the facts as to a given issue are solely or peculiarly within the knowledge of one party although authorities may be found which seemingly place upon this party the burden of proving such facts." [1]

█ We believe other principles govern the decision of this case and should be applied. First, in construing the clause in the contract relieving defendant from making renewals or repairs necessitated by reason of "negligence or misuse * * * or rendered necessary due to any other cause beyond our control," the rule of ejusdem generis must be applied. Thus the general words "other cause beyond our control" must be restricted to causes of the same kind as those specifically enumerated, i. e., negligence or misuse by plaintiff.[2] This is particularly true because this contract was prepared by defendant and thus in case of doubt must be construed against it.[3] Thus construed, we believe the contract did not exempt repair or replacement by defendant of parts damaged or destroyed by fire originating in the control apparatus unless such fire resulted from plaintiff's negligence, misuse, or similar cause.

█ With respect to the burden of proof, we believe the rule is applicable that where a contract places a general duty upon a party with certain listed exceptions then the burden is upon that party to prove that he comes within the exceptions. Thus in an insured's action on a policy insuring against any loss arising from any cause whatsoever with certain exceptions then the burden of proving that the loss comes within the exceptions rests on the insurer.[4] Here we believe the burden of proof rested on defendant to establish that the fire was due to one of the causes excepted in the contract.

█ Defendant urges that plaintiff in any event was not entitled to recover because the city inspector required, among other things, that the elevator controller be "renewed" and the contract between the parties contained a further provision that "we [defendant] shall not be required to install new attachments * * * as recommended or directed by insurance companies, or government, state, municipal or other authorities." We believe it clear that the clause in question applied to "new attachments" ordered as a result of new requirements and not to new attachments to replace old ones damaged beyond repair. The contract in several other places contains the word "replace" as well

[1] Jones on Evidence, 4th ed., § 181.

[2] Vol. 1 Bouvier's Law Dictionary, Rawle's 3rd Revision, page 979.

[3] 17 C.J.S., Contracts, § 324.

[4] Chase Rand Corporation v. Central Ins. Co., 2 Cir., 152 F.2d 963; New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948; United States Fire Ins. Co. v. Universal Broadcasting Corporation, 205 Ark. 115, 168 S.W.2d 191; Hanover Fire Ins. Co. v. Pruitt, 59 Ga.App. 777, 2 S.E.2d 123; Goldfarb v. Maryland Casualty Co., 311 Ill.App. 568, 37 N.E.2d 376; Kentucky Central Life & Accident Ins. Co. v. White, 106 Ind.App. 530, 19 N.E.2d 872.

as "repair" and hence we are clear that the construction urged by defendant is unsound.

Since the case was decided previously upon erroneous rules of law and since the record is not clear as to what finding of fact the trial court would have made in applying the correct principles as herein outlined, we conclude that a new trial must be had.

Reversed, with instructions to award a new trial.