WILLIAM B. ROSSMAN AND AMELIA ROSSMAN v. NEW YORK LIFE
INSURANCE COMPANY

No. 7315SC534

(Filed 24 October 1973)

1. Courts § 21— what law governs — life insurance contracts completed in
another state
    The substantive law of this State applies to an action to recover
double indemnity benefits under life insurance contracts completed in
New York where the insured was a resident of this State at the time
of his death. G.S. 58-28.

2. Insurance § 46— death from accidental bodily injury — intentional in-
jection of drugs
    Insured's death did not result from "accidental bodily injury"
within the meaning of double indemnity provisions of two life insur-
ance policies where insured's death was caused by his intentional
intravenous injection of himself with a non-prescription methyl am-
phetamine.

APPEAL by plaintiff from Bailey, Judge, 1 January 1973
Session of Superior Court held in ORANGE County.

This civil action was instituted by the plaintiffs for the
recovery of twenty thousand dollars ($20,000) which sum repre-
sents the accidental death benefits under two (2) policies of life
insurance issued by the defendant, New York Life Insurance
Company, on the life of James L. Rossman, son of the plaintiffs.
The defendant admits that both policies were in full force and
effect on the date of the death of the insured and in fact the
defendant has paid the face amount of each of said policies to
the beneficiaries; although it has refused to pay the accidental
death benefits under either policy.

Both parties moved for summary judgment pursuant to
G.S. 1A-1, Rule 56, of the Rules of Civil Procedure. The record
discloses the uncontroverted facts to be as follows:

Each of the two (2) insurance policies on the life of James
Rossman contains a clause which requires double indemnity
benefits to be paid if "the Insured's death resulted directly, and
independently of all other causes, from accidental bodily in-
jury." On the evening of 30 October 1969 Rossman knowingly
and voluntarily injected himself with a non-prescription methyl
amphetamine. Within a short period after such injection the in-
sured complained of a headache, became dizzy, and lapsed into
a coma. He was rushed to North Carolina Memorial Hospital

in Chapel Hill by friends and after a period of approximately eight hours died at the hospital on 31 October 1969. The cause of death as shown in the Certificate of Death and as diagnosed by both Dr. Dalldorf, the County Medical Examiner, and Dr. Page Hudson, the pathologist who performed an autopsy on the insured's body, was an intra-cerebral hemorrhage resulting from the intravenous injection of methyl amphetamine. At the time of his death, Rossman, who was a Phi Beta Kappa graduate of the University of North Carolina at Chapel Hill, was a resident of North Carolina and was employed as the manager of Harry's Restaurant in Chapel Hill.

From summary judgment for the defendant, plaintiffs appealed.

*Bryant, Lipton, Bryant & Battle by Victor S. Bryant, Jr., for plaintiff appellants.*

*Smith, Moore, Smith, Schell & Hunter by Larry B. Sitton for defendant appellee.*

HEDRICK, Judge.

[1] There being no genuine issue as to any material fact, the question to be resolved on this appeal is whether defendant is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c), Rules of Civil Procedure. Plaintiff first contends that the substantive law of the State of New York governs this action since both contracts of insurance were completed in the State of New York; however, N. C. G.S. 58-28 declares that "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein. . . ." Therefore, since at the time of his death James Rossman was a resident of North Carolina, under the provisions of G.S. 58-28, the life insurance policies in question are deemed to have been made in North Carolina and are subject to the laws of this State.

[2] The only question remaining is whether Rossman's death resulted from "accidental bodily injury." Both policies contain identical clauses which declare that in order to qualify for double indemnity benefits it must be proved that "insured's death resulted directly, and independently of all other causes, from accidental bodily injury." The parties are in agreement that the intravenous injection of the methyl amphetamine was intentional; thus, our inquiry must be directed to the impact on the terms of the policy of such a voluntary, intentional act.

The key word appearing in that portion of the insurance contracts dealing with double indemnity benefits is "accidental." Justice Bobbitt (now Chief Justice) writing for the court in *Mills v. Insurance Co.*, 261 N.C. 546, 135 S.E. 2d 586 (1964) was confronted with the same phrase "accidental bodily injury" and in ascertaining the meaning of the salient word "accidental" he stated: "The word 'accidental' in the absence of a policy definition, must be interpreted in its usual, ordinary, and popular sense." The *Mills* decision, in seeking to determine the usual, ordinary, and popular meaning of "accidental bodily injury" cited cases which afforded coverage for death or injury by "accidental means," and quoted with approval the following statement of Justice Higgins in *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214:

> "An injury is 'effected by accidental means' if in the line of proximate causation the act, event or condition from the standpoint of the insured is unintended, unexpected, unusual, or unknown."

There being in the instant case no policy definition of "accidental" we conclude that the usual, ordinary, and popular definition of "accidental" would not include "intentional bodily injury," and that James Rossman's intentional self-injection of methyl amphetamine was not an "accidental bodily injury" but rather an "intentional bodily injury." Therefore, on this record, the plaintiff is not entitled to double indemnity benefits. See also, *Whiteside v. New York Life Insurance Company*, 7 Wash. App. 790, 503 P. 2d 1107 (1972).

The defendant was entitled to judgment as a matter of law which is

Affirmed.

Judges PARKER and BALEY concur.