WESLEY GANGELL vs. NEW YORK STATE TEAMSTERS
COUNCIL WELFARE TRUST FUND.

Berkshire.    September 11, 1978. — October 19, 1978.

Present: HALE, C.J., ARMSTRONG, & BROWN, JJ.

*Insurance,* Health insurance, Construction of policy. *Words,* "Illness."

The general term "illness" as used in a basic health insurance plan
    included within its scope mental as well as physical illness absent
    any limitation on its scope contained in either the basic plan or a
    related major medical plan. [632–636]

CIVIL ACTION commenced in the Probate Court for the
county of Berkshire on March 19, 1975.

The case was heard by *Nuciforo, J.*

*Thomas J. Donoghue* for the defendant.

*William Shields, III,* for the plaintiff.

HALE, C.J. This is an action by which the plaintiff Gan-
gell seeks to compel the defendant New York State Team-
sters Council Welfare Trust Fund (Fund) to pay certain
hospital charges pursuant to the provisions of a docu-
ment entitled "Your Health and Hospital Program of the
New York State Teamsters Council Health and Hospital
Fund" (plan).[1]

The undisputed facts disclose that Gangell is employed
by Old Colony Transportation Co. and is a member of
Teamsters Local Union No. 294. Under the applicable
collective bargaining agreement, Old Colony made week-
ly payments of $19.10 to the Fund on behalf of each of the

[1] While this document is apparently only a detailed description of
a benefit program set out in another document, the parties in the court
below and before us have argued the case as if this were the controlling
document.

union employees, including Gangell. The Fund, in turn, provides certain medical benefits to employees and their eligible dependents under the terms of the relevant plan. The nature of the benefits depends on the size of the weekly employer contribution, which ranges from $9.60 to $19.10. Gangell's coverage was under the basic "19.10 Plan" and the "Major Medical Plan."

The hospital expenses that Gangell seeks to have the Fund pay were incurred at McLean hospital during a 117-day in-patient stay by Gangell's son for the treatment of mental illness. The Fund concedes that the son is an eligible dependent under the plan. Total expenses for the stay amounted to $26,536.44, but the Fund refused to pay more than $6,510.94, the amount of the hospital charges over and above the charges for room and board.

Gangell and the Fund both moved for summary judgment. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The sole question presented for resolution by the Probate Court was whether the room and board expenses of hospitalization caused by confinement for mental illness were covered by the plan. The Probate Court acted on the plaintiff's motion for summary judgment by ruling that the basic 19.10 plan covered hospital room and board and other expenses incurred because of mental illness, and the defendant has appealed. The appeal must be dismissed because no final judgment was entered pursuant to that ruling. However, in spite of the prematurity of this appeal, we will consider by way of dictum the issues raised because the posture of the case is such that a judgment for the plaintiff may now be entered by the clerk without further action on the part of the judge. See Mass.R.Civ.P. 58(a)(1), as amended effective January 1, 1977, 371 Mass. 908 (1977); *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket,* 5 Mass. App. Ct. 206, 207–208 (1977).

1. The basic 19.10 plan provides hospital expense benefits to all eligible members and their dependents who "are admitted to a legally constituted and operated hospi-

tal . . . for any one continuous period of disability or for all periods of disability resulting from the same or related *illness* or injuries . . ." (emphasis supplied). The plan provides for up to 120 days hospital room and board in semi-private accommodations, necessitated by illness and additionally for all miscellaneous hospital services supplied during that time. The plan does not define the term "illness." While it lists items not covered, nowhere does the plan exclude expenses due to mental illness from its coverage. Nor does it list afflictions considered included within the coverage that might define or limit the range of illnesses it was intended to cover.

When a health insurance plan includes the generally inclusive term "illness," the burden rests upon the insurer, here the Fund, to point to language that excludes coverage of expenses caused by mental illness. "If it were not the intention to include it [coverage of mental illness], the rules of the society should be framed so as expressly to exclude it," *McCullough* v. *Expressman's Assn.*, 133 Pa. 142, 151 (1890), quoting from *Burton* v. *Eyden*, L.R. 8 Q.B. 295, 298 (1873) (opinion of Blackburn, J.).

"A morbid condition of the mind, a deviation from its healthy and normal state, can be a disease or illness as well as a morbid condition of the body . . . . It is generally held that insanity is a sickness within the meaning of a health and accident policy." *Price* v. *State Capital Life Ins. Co.*, 261 N.C. 152, 156 (1964). Absent any limitation on its scope that might be inferred from certain language in either the basic or the major medical plan, discussed below, we hold that the general term "illness" as used in the basic 19.10 plan includes within its scope mental as well as physical illness. *Connecticut Mut. Life. Ins. Co.* v. *Akens*, 150 U.S. 468, 475 (1893). *Lewis* v. *Liberty Indus. Life Ins. Co.*, 185 La. 590, 591 (1936). *Price* v. *State Capital Life Ins. Co., supra. McCullough* v. *Expressman's Assn. supra* at 150–151. *Robillard* v. *Societe St. Jean Baptiste de Centreville*, 21 R.I. 348, 350–351 (1899). *American Natl. Ins. Co.* v. *Denman*, 260 S.W. 226, 227 (Tex. Civ. App.

1924). See generally 10 Couch, Insurance § 41:802 (2d ed. 1962).

2. The Fund next argues that there is language in the major medical plan that limits the meaning of "illness" as used in the basic 19.10 plan. It claims that a paragraph in the major medical plan that refers to mental illness should be construed to exclude from the coverage of the basic 19.10 plan any expenses for hospital room and board necessitated by mental illness.

The major medical plan provides for the payment to persons in the basic 19.10 plan of eighty per cent of all "eligible expenses" that exceed a certain deductible amount. It specifically provides for the payment of expenses "over and above those paid by the Basic Plan." Only those employees who are covered by a basic plan and for whom the weekly employer contribution is $13.60 or more are eligible to receive benefits under the major medical plan.

The eligible expenses under the major medical plan which are covered when necessitated by "sickness" are listed in eleven numbered paragraphs of the document describing the plan. Among those expenses are "Hospital charges for room and board" and "Hospital charges for other services." Also covered are some expenses which are incurred in or out of the hospital, such as the cost of physician's services, and some which are for services performed outside the hospital such as the cost of ambulance service. Then follow paragraph no. 12 entitled, "MENTAL ILLNESS AND FUNCTIONAL NERVOUS DISORDERS."[2] There is no other mention of mental illness.

_____

[2] That paragraph states in full: "12. The regular Major Medical benefits apply to expenses incurred during a hospital stay for which a room and board charge is made, and to charges for administration of convulsive therapy whether administered in or out of a hospital. For other expenses, incurred in a hospital when no room and board charge is made, or incurred outside the hospital, the following will apply: 1. Benefits will be determined at the rate of 50% of eligible expenses. 2. For professional psychiatric services, only the first fifty visits in any calendar year will be eligible. Also not more than $10 per visit will be

The first sentence of paragraph 12 refers to in-patient hospital treatment and the remainder of the paragraph to out-patient hospital treatment and to treatment elsewhere such as doctors' offices or clinics. For the purposes of this case, we need only consider the effect, if any, of the first sentence on the plaintiff's claim.

We noted in part 1 that the basic plan did not mention hospitalization for mental illness when it listed the items not covered by that plan. Nowhere is there a specific exclusion for such illness in the major medical plan. It appears to us that had the plan's drafters intended to exclude hospital room and board or miscellaneous benefits for mental illness, the plan would have included a clear statement to that effect.

All the benefits provided in the major medical plan are over and above those provided in the basic plan. The major medical plan provides for benefits after the termination of the basic coverage if the beneficiary is totally disabled at the time of termination. The plans, while cumulative in provision of benefits, are independent in operation. There is nothing to show that the drafters intended that the first sentence of paragraph 12 of the major medical plan should take the place of a clear statement in the basic plan excluding mental illness benefits from the basic coverage. No statement in the basic plan incorporates, explicitly or implicitly, any of the provisions of the major medical plan. Each plan is complete in itself and contains an apparently full list of exclusions from and inclusions in its coverage. There are differences between the scopes of coverage of the two plans, perhaps reflecting the different purposes of the plans,[3] which sug-

included in the eligible charges (that is a $10 maximum per visit, 50% of $20)."

[3] The introduction to the plan notes that the purpose of the basic plan is to compensate members for common or "everyday occurrences." The major medical plan's primary goal, on the other hand, is to provide benefits that avoid "harassment" from hospitals and doctors for expenses arising from catastrophic incidents.

gest that their coverages were not intended to be exactly parallel. Against the background of these differences in scope and purpose, it would not be anomalous for the drafters to have chosen to adopt different types of coverage of mental health expenses in the two plans as well. Without more, the lack of any limitation of benefits for mental illness in one plan cannot be affected by the inclusion of certain such benefits in the other.

Considering the effect of the first sentence of paragraph 12 in the light of the provisions of both plans, we hold that it does not operate to exclude hospital room and board benefits for a mentally ill basic plan beneficiary but rather provides for the payment of some hospital expenses in excess of those incurred during the 120-day period covered under the basic plan.[4] We conclude therefore that the judge was correct in ruling that the plaintiff was entitled to be paid for both the hospital room and board charges and the miscellaneous expenses.

*Appeal dismissed.*

---

[4] We need not and therefore do not attempt to define in any way the coverage of expenses due to mental illness afforded by the major medical plan.