AMANDA MARSH *et al.*, Plaintiffs-Appellants, *v.* METROPOLITAN LIFE INSURANCE COMPANY, INC., Defendant-Appellee.

Second District   No. 78-166

Opinion filed April 16, 1979.

R. Peter Grometer and Ralph C. Putnam, Jr., both of Alschuler, Putnam, McWethy & Weiss, of Aurora, for appellants.

Joseph J. Hasman and Ellen J. Kerschner, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs sought recovery for the death of the decedent resulting from an overdose of heroin based on the provisions of a group insurance policy under which the defendant (Metropolitan) insured against death

by "Accidental Means * * * independently of all other causes."[1] Judgment was entered on the jury verdict in favor of Metropolitan following a jury trial and plaintiffs appeal. They contend that death by an unintended overdose of a narcotic drug, as a matter of law, is accidental within the meaning of the policy and that the verdict of the jury is not supported by the evidence.

The decedent, an employee of Caterpillar Tractor Co., was insured under a group policy for accidental death. On April 26, 1974, he left work and returned to his apartment which he shared with his sister. Witnesses testified that decedent was planning to have dinner with them that evening. At approximately 5 p.m. he was found by his sister sitting on the floor of his bedroom, unconscious, with a needle in his arm. An analysis of the blood and urine of decedent taken after his death indicated the presence of 1.4 percent morphine, a lethal level. It was conceded that although the overdose was self-administered, death was unintended. Prior to his death, decedent had been a patient in various drug treatment programs. After Metropolitan disclaimed liability the plaintiffs as beneficiaries of the policy brought this action to recover accidental death benefits.

Metropolitan essentially argues that the trial court did not err in denying plaintiffs' motion for a directed verdict at the close of all the evidence because the question of whether a death is accidental is a question of fact; and that the jury's verdict was not contrary to the manifest weight of the evidence. Metropolitan argues that the death was not an "accident" because it was "foreseeable" that a heroin user will unintentionally administer a lethal dose to himself. This poses the principal issue in the case, but since the jury found for the insurer in a general verdict, it is necessary to additionally consider whether it may be justified based on either of the relevant exclusionary provisions which deny coverage for "an intentionally self-inflicted injury" or an injury "caused or contributed to by disease or bodily or mental infirmity."

Under the Illinois cases recovery is permitted for a death if that result is accidental even though the means of destruction, here the injection of heroin, is intentional. " 'Accidental means' has been held to be

---

[1] "If, while insured under the Group Policy for insurance for Death or Dismemberment by Accidental Means, the Employee sustains bodily injuries solely through accidental means, and within 365 days thereafter suffers [loss of life] ° ° ° as a direct result of such bodily injuries independently of all other causes, the Insurance Company shall pay the amount of insurance specified for such loss in Section B hereof, provided, however, that in no case shall any payment be made for death or any other loss which is:

(A) caused or contributed to by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof, or
° ° °
(E) caused by or resulting from intentional self-destruction or intentionally self-inflicted injury, while sane or insane."

synonymous with 'accidental result', and defined as something which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen." *Taylor v. John Hancock Mutual Life Insurance Co.*, 11 Ill. 2d 227, 230 (1957).

Here, Metropolitan reasons that the death of the insured, although unintended, was not "unexpected, unusual or unforeseen" within the requirement of *Taylor.* We cannot agree. The test of foreseeability in these circumstances appears to be an objective one, phrased in terms of a contingency "known to all sensible men as likely to follow" as a natural result of one's conduct. (*Hutton v. States Accident Insurance Co.*, 267 Ill. 267, 269 (1915).) It has also been phrased in the objective terms of a contingency which "any man with ordinary intelligence and prudence * * * could have reasonably foreseen." *Cory v. Woodmen Accident Co.*, 333 Ill. 175, 182 (1928). See also *Yates v. Bankers Life & Casualty Co.*, 415 Ill. 16, 21-22 (1953).

The test of foreseeability in interpreting coverage under an insurance policy is not aided by the definition of foreseeability set forth in either the tort or the criminal cases. In the area of tort liability, foreseeability is defined generally in terms of "more than a mere possibility of occurrence [arising from] * * * conduct which falls below the standard established for the protection of others 'against unreasonable risk of harm'." (*Cunis v. Brennan*, 56 Ill. 2d 372, 376 (1974).) Under the Illinois Criminal Code foreseeability sufficient to make one's conduct "reckless" requires a conscious disregard of "a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a *gross deviation* from the standard of care which a reasonable person would exercise * * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 4—6.) However, from a review of the cases, neither the level of foreseeability requisite for tort liability nor the level requisite for criminal recklessness is sufficient to render a mishap a "non-accident" when conduct is measured against the terms of insurance coverage for accidental injury.

This is illustrated by the case of *Taylor v. John Hancock Mutual Life Insurance Co.*, 11 Ill. 2d 227 (1957). In *Taylor*, the decedent, with others, deliberately spilled 10 gallons of gasoline in a residence, intending to commit arson and collect under a policy of fire insurance; returned to the house to retrieve some articles; and was burned to death when the fire unexpectedly started before intended when a gas pilot light in the living room furnace caused the poured gasoline to ignite. Clearly the decedent was not in the exercise of reasonable care for his own safety at this time and the accident would have been foreseeable for the purpose of determining tort liability under the *Cunis v. Brennan* test (56 Ill. 2d 372, 375-76), yet insufficient under the same policy terms as are here involved.

Similarly in *Yates v. Bankers Life & Casualty Co.*, 415 Ill. 16 (1953), where the decedent was pushed backwards out of a front door and onto a porch which was six inches lower than the floor of the house and lost his balance, striking his head and dying as a result, the mishap would clearly appear to be foreseeable under tort principles. However, recovery was permitted under the accident clause of the insurance policy, the supreme court holding that the result was not so foreseeable as to render the mishap a nonaccident for insurance purposes. And in *Rodgers v. Reserve Life Insurance Co.*, 8 Ill. App. 2d 542, 544-45 (1956), this court ruled that a high degree of recklessness evidenced by driving a car with two passengers present at a speed of 100 miles per hour on a country road at night, with warning of an approaching curve, was insufficient to make the resulting death of the driver a nonaccident under the insurance clause. The court noted that the decedent, in consciously incurring a known hazard in attempting to negotiate the curve at a high rate of speed, "clearly failed to exercise judgment, was careless, reckless, perhaps foolhardy, but it does not follow that he intended to destroy himself or imperil the lives of his guest passengers. His death was not the rational, natural and probable result of his intentional act and, upon the facts as they appear in this record, plaintiff is entitled to recover." (8 Ill. App. 2d 542, 553-54. See also *Wylie v. Union Casualty & Life Insurance Co.*, 15 Ill. App. 2d 448, 453-56 (1957).) It appears that the danger of insured's death from an unintended overdose was not more foreseeable than the conduct held to be accidental in *Taylor, Rodgers* and *Wylie.*

Cases involving "Russian roulette" are not analogous in terms of the level of foreseeability. Nor are the other cases cited by Metropolitan which involve violent attacks by an insured upon another where one clearly places his life in jeopardy and where the insured must expect to a high degree of certainty that he will be violently repelled. See *Rodgers v. Reserve Life Insurance Co.*, 8 Ill. App. 2d 542, 546-47 (1956). See also *Cory v. Woodmen Accident Co.*, 333 Ill. 175, 181-82 (1928); *Wylie v. Union Casualty & Life Insurance Co.*, 15 Ill. App. 2d 448, 453 (1957); *Hutton v. States Accident Insurance Co.*, 267 Ill. 267, 269 (1915).

In jurisdictions, like Illinois, which do not distinguish between accidental means and accidental results the courts have generally concluded that death under circumstances similar to those found in this case is accidental. In *Beckham v. Travelers Insurance Co.*, 424 Pa. 107, 225 A.2d 532 (1967), a recovery for the plaintiff whose decedent had died as a result of a self-administered overdose of narcotics, was affirmed. While indicating that it could reach the result it desired by simply stating that the evidence was sufficient for the jury to reach the verdict, the court went beyond this and found that plaintiff's decedent's death was an "accident" as a matter of law. The court reasoned that the insured had not

unduly exposed himself to the risk of death by his action and that insurance policies should be free from fine distinctions which the public would not understand, noting that the public would commonly understand and speak of death in the manner indicated as an "accident." (225 A.2d 532, 536-37.) In *Pilcher v. New York Life Insurance Co.*, 25 Cal. App. 3d 717, 102 Cal. Rptr. 82 (1972), plaintiff's decedent died as the result of a self-administered overdose of heroin. On appeal the trial court's entry of judgment in favor of the insurer was reversed, the court noting:

> "All of this uncontradicted evidence * * * leads one ines- capably to the conclusion that the decedent was just getting another 'fix' to satisfy his addiction to the drug, and that the overdose was unexpected, undesigned and certainly unintentional. Very obviously he intended the act of administering the drug but he did not intend the overdose or the resultant death." 25 Cal. App. 3d 717, 725, 102 Cal. Rptr. 82, 87.

■■ We therefore conclude that the plaintiffs' decedent's death from an unintended overdose of heroin must be regarded as an "accident" as a matter of law in interpreting the instant insurance policy.

As we previously noted the jury rendered a general verdict so that it may be considered possible that it found the plaintiffs' decedent's death to be an accident but also found that recovery was precluded because of the exclusionary clauses. However, the record does not support this. It should be noted that it is the duty of the insurer to plead and prove that a particular loss is within the exception of an exclusionary clause. (See, *e.g., Goldfarb v. Maryland Casualty Co.*, 311 Ill. App. 568, 571 (1941).) Metropolitan argues based on the exclusionary clause (A) that the jury could have found the death to have been in fact "caused or contributed to by disease or bodily or mental infirmity," that is, heroin addiction; and that therefore another cause existed so that it could not have been said that the death resulted from accident "independently of all other causes." Under this contractual provision of the policy however we are not required to search beyond the immediate proximate cause to find other causes more remote. Metropolitan's argument in this regard has a long history. In the early case of *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 F. 945 (6th Cir. 1893), the insured "blacked out" while standing in a stream and as a consequence drowned. The insurance company argued that although the insured's death was caused by accidental drowning, the cause of that cause was his bodily infirmity which led to his blacking out. The court rejected this argument, stating at page 954:

> "We are of the opinion that in the legal sense, and within the meaning of the last clause, if the deceased suffered death by

drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause."

In *Stroburg v. Insurance Company of North America*, 464 S.W.2d 827 (Tex. 1971), the insurer disclaimed liability for decedent's death sustained in an automobile accident, under a clause excluding loss resulting from disease, on the basis that the accident was caused because of the insured's bleeding ulcer which in turn contributed to his losing control of the car. The court rejected the argument and held that "disease induced accidents" were within the policy coverage. (464 S.W.2d 827, 830.) In support of its view, the Texas Supreme Court quoted (464 S.W.2d 827, 830-31) from *Bohaker v. Travelers' Insurance Co.*, 215 Mass. 32, 102 N.E. 342 (1913). In *Bohaker*, the Massachusetts Supreme Court came to a similar conclusion:

"The language of this contract, to the effect that the 'accidental means' must have operated 'independently of all other causes' to produce the death, does not change the general rule of law, that the proximate and not a remote cause is the one to which the law looks. * * * The policy in the case at bar does not go so far as to require the court to search beyond the active, efficient, procuring cause *to a cause of a cause*. When one single predominant agency is disclosed, directly producing as a natural and probable result the injury, which is accidental, and which operates independently of other like causes, then the effectual means required by the policy have been found." (Emphasis added.) 215 Mass. 32, 35, 102 N.E. 342, 344.

The Texas Supreme Court, in *Stroburg*, referred to nine decisions of courts of other jurisdictions which, at first glance, appear to reach a contrary conclusion. The Texas court, however, distinguished all nine cases in the following way:

"The cases have a common denominator; in each case the policy of insurance on which suit was brought contained a provision excluding liability if disease or bodily infirmity contributed 'directly or indirectly' to the insured's injuries or death. Liability was denied in such cases because of the wording of the exclusionary clause and not because of the wording of the coverage clause. The distinction was drawn in the early case of *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 F. 945 (6th Cir. 1893), in which the court recognized the soundness of the

English decisions in *Lawrence* and *Winspear*, supra, but held that a different result is required when a policy contains a provision excluding liability when disease or bodily infirmity contributes to the loss 'directly or indirectly.' " 464 S.W.2d 827, 831.

The Illinois cases that touch upon this matter agree with the majority view, discussed above. In *Sturm v. Employers' Liability Assurance Corp.*, 212 Ill. App. 354 (1918), the insured drowned in his bathtub. The insured was covered by an insurance policy, which provided for recovery for death or injury "sustained during the term of this policy, solely and independently of all other causes through external, violent and accidental means." (212 Ill. App. 354, 360.) The defendant insurance company argued, among other things, that the evidence indicated that the decedent "blacked out" while in the bathroom of his home and, as a consequence, slipped or fell into the bathtub where he drowned. The defendant thus argued the insured's death resulted from "disease" rather than "accident." The court, in rejecting this argument made the following statement:

"Even though the insured were diseased and his abnormal condition led to his falling into the water and being drowned—and so in a sense contributed to his death—it is not the law that that contribution of disease to his death would prevent the plaintiff from recovering." (212 Ill. App. 354, 364.)

See also *Miner v. New Amsterdam Casualty Co.*, 220 Ill. App. 74, 78-79 (1920).

The exclusionary clause under consideration merely excludes coverage for loss "caused or contributed to by disease or bodily or mental infirmity." It does not state, in broad terms, that any injury caused "directly or indirectly, partly or wholly, by disease or mental infirmity" is not compensable. As a consequence, this court need not seek out the cause of the act of self-injection, *i.e.*, the cause of the cause.

■■ Moreover, there is some question whether heroin addiction is a "disease" within the intendment of the clause in the policy which excludes coverage where death is caused or contributed to by disease. Terms of an insurance policy are to be taken and understood "according to their plain, ordinary and popular sense." (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co.*, 411 Ill. 325, 332 (1952).) A dictionary definition of "disease" refers to "an impairment of the normal state of the living animal * * * being a response to environmental factors, * * * inherent defects of the organism * * * or to combinations of these factors: SICKNESS, ILLNESS." (Webster's Third New International Dictionary 648 (1961).) This definition of "disease" does not clearly encompass heroin addiction. In any event the word "disease" as used in the insurance policy is at best ambiguous or uncertain and the exclusion is therefore to be

construed narrowly and against the insurer. See *Grahame v. Mitchell*, 28 Ill. App. 3d 334, 341 (1975).

Metropolitan also raised an affirmative defense based on the exclusion in (E) which bars recovery for injuries caused by "intentionally self-inflicted injury." It argues that the jury may have determined that the insured's death was caused by the intentionally self-inflicted injury in the nature of the heroin overdose. While this argument might be a defense in states which distinguish between accidental means and accidental results (see, *e.g., Rossman v. New York Life Insurance*, 19 N.C. App. 651, 199 S.E.2d 681, 682 (1973)), the defense has no merit in Illinois since the Illinois courts do not distinguish between " 'accidental means' " and " 'accidental result.' " (See 11 Ill. 2d 227, 230.) Thus, despite the fact that the means of destruction in the instant case, the act of self-injection, was intentionally caused by the decedent, the mishap must be regarded as an accident since the result of the intentional act, the death, was unintended.

We therefore conclude that the death of the decedent was the result of "accident" within the coverage of the policy issued by Metropolitan and that the trial court erred in denying plaintiffs' motion to direct that finding as a matter of law. In addition, we conclude that the verdict and judgment cannot properly be supported on this record by the provisions of the exclusionary clauses of the policy. We therefore reverse the judgment and remand to the trial court with directions to enter judgment in favor of the plaintiffs in the amount found to be due.

Reversed and remanded with directions.

RECHENMACHER and WOODWARD, JJ., concur.