**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff,**

**v.**

**Patricia AGUILAR, Raymond Aguilar, Jr., Karen Aguilar, a minor, Julie Aguilar, a minor, and Melissa Aguilar, a minor, Defendants.**

**No. 81 C 4449.**

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1983.

Richard J. Jacobson, James T. Otis, James J. Casey, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Joseph P. Spiezer, Spiezer, Thorsen & Ellerby, Rockford, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Raymond Aguilar, Sr. was insured under an accidental death and dismemberment insurance policy issued by the plaintiff. The policy excluded any direct or indirect loss caused by "disease, whether the disease is the proximate or a contributing cause of the loss." The insured was killed during an exchange of gunfire with Chicago police officers on January 26, 1981. His wife and children filed claims as beneficiaries. Plaintiff filed this action seeking a declara-tory judgment that its policy did not apply to Aguilar's death.

On August 30, 1982 this court granted summary judgment in plaintiff's favor on the grounds that the insured's death was not accidental and that the policy also did not cover a death which occurred during the commission of a felony. We vacated this judgment on March 1, 1983 on the basis of a psychiatrist's affidavit submitted by the defendants which concluded that the insured was insane at the time of his death. Later discovery indicated that the insured was suffering from a "major depressive disorder" for at least a month before his death. In his deposition defendant's psychiatrist indicated that the insured's death "was caused by the ... major depressive disorder." This position was amended in a later affidavit to a view that "the disease was a cause of the accident which resulted in the death of Raymond Aguilar, and in that sense and in that sense only did the mental disease cause the death of Raymond Aguilar."

Plaintiffs later filed the motion before us requesting that the court reconsider its vacation of its earlier grant of summary judgment. In support, it asserts that the insured's mental disorder was a disease within the exclusionary provisions of the policy and that the policy thus does not cover insured's death. This motion is denied.

### I.

The issue in this case is a narrow one: is it beyond dispute that the insured's mental disorder was a disease which was the proximate or contributing cause of his death. There is no doubt that Aguilar's depressive state, which had existed for at least a month before his death, was a "disease." *See Connecticut Life Insurance Co. v. Akens,* 150 U.S. 468, 14 S.Ct. 155, 37 L.Ed. 1148 (1893), *Gangell v. New York State Teamsters Council Welfare Trust Fund,* 6 Mass.App. 631, 381 N.E.2d 1308 (1978). The problem is whether the disease, which existed at the time of the injury, was a cause of the loss as a matter of law.

There are three causal relationships between a disease, an injury and a loss. The

injury may cause the disease which results in a loss. The injury may act upon a predisposing condition or latent disease which leads to the loss. Finally, the disease may cause the injury which in turn leads to a loss. Appleman, *Insurance Law and Practice*, § 393. This case involves the third type of causal relationship. There is a tendency by the courts to construe accident insurance contracts to cover death or serious injuries which result from this type. *Id.*

It is not apparent on its face that the insurance contract even applies to the causal relationship involved in this case. The policy provides that in order to recover the insured must show that he or she has, (1), received an accidental bodily injury, (2), suffered certain specified losses as a result of the injury and, (3), not suffered the loss as a result of any of the excepted risks:

> "Upon receipt by the Insurance Company of due proof that a Member, while insured under this policy, has *received an accidental bodily injury,* and *as a result of the injury,* directly and independently of all other causes, *has suffered any of the following losses* within 365 days after the date on which the injury was received, and that *the loss* suffered by the Member *did not result from any of the Risks Excepted."* (emphasis added.)

A "disease, whether the disease is the proximate or a contributing *cause of the loss,"* exempts from policy coverage *"any loss* which results directly or indirectly".[1] (emphasis added.)

As indicated by the highlighted language, the policy makes a distinction between "injury" and "loss". A supportable interpretation of the contract is that the disease exception only applies to the period between the accidental injury and the loss and not to situations where a disease causes the accidental injury but plays no role in the resulting loss.[2] Some of the other exceptions in the policy do apply to specific types of injuries. *See* fn. 1, *supra.* If the plaintiff sought an expansive disease exception, it would seemingly have specified that "diseases causing injuries" as well as those causing losses were excepted.

Ambiguities in insurance contracts are to be construed against the insurance company, *U.S. Fire Insurance Company v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981). Our denial of plaintiff's motion, however, does not depend upon this interpretation of the contract but upon the law of proximate cause discussed below.

## II.

For the purposes of the pending motion, there appear to be three links in the causal chain which led to Aguilar's death. First, his mental illness prompted him to fire upon the police. Second, this caused a policeman to shoot Aguilar. Third, as a result of his gunshot wound Aguilar died. Plaintiff argues that Aguilar's mental illness was a "proximate or contributing cause" of his death, thus triggering the

---

**1.** The policy exception provision in the insurance contract read as follows:

"RISKS EXCEPTED. The insurance provided by this policy does not cover, and no payment will be made for, any loss which results directly or indirectly from
1. suicide or intentionally self-inflicted injury, while sane or insane;
2. bacterial infections (except primary and secondary infection resulting from an accidental wound);
3. disease, whether the disease is the proximate or a contributing cause of the loss;
4. war, declared or undeclared or any act of war, participation in a riot or in the commission of a felony;
5. injuries received in an accident which occurs while the Member is operating, learning to operate or acting as a pilot or crew member of an aircraft, unless the accident occurs while the Member in the course of his employment with the Employer is acting as a pilot or crew member of an aircraft...."

**2.** The court in *Marsh v. Metropolitan Life Insurance Co.,* 70 Ill.App.3d 790, 27 Ill.Dec. 158, 388 N.E.2d 1121, 1123–24 (2d Dist.1979) also focused on this distinction between "injury" and "loss." *See also Continental Casualty Company v. Maguire,* 28 Colo.App. 173, 471 P.2d 636 (Colo.App.1970). That case involved an insane insured who was injured after firing upon police. The court allowed recovery under an accident insurance policy.

application of the exclusionary provision in the policy.

The issue of causation in accident insurance cases is closely related to the problem of whether an injury was "accidental." If disease caused the claimed loss, for example, even an unexpected but unrelated injury would not be an "accident" under the insurance contract. An accident is "something which happens by chance or fortuitously, without intention or design, and which is unexpected and unforeseen." *Taylor v. John Hancock Insurance Co.*, 11 Ill.2d 227, 230, 142 N.E.2d 5 (1957). The test of foreseeability in the accident insurance area, and consequently the operative understanding of causation, is less expansive than in either Illinois tort or criminal law. *Marsh v. Metropolitan Life Insurance Co.*, 70 Ill.App.3d 790, 27 Ill.Dec. 158, 388 N.E.2d 1121, 1123–24 (2d Dist.1979). The more abbreviated notion of causation operating in the accident insurance area is illustrated by a variety of cases exhibiting relationships between disease, injury and loss that are akin to the one in this case.

*Carlson v. New York Life Insurance Co.*, 76 Ill.App.2d 187, 222 N.E.2d 363 (2d Dist.1966), exemplifies the situation where an accidental injury aggravates a pre-existing disease. There plaintiff's latent schizophrenia was triggered by an injury to his face. Construing an accident insurance policy similar to the one here, the court upheld a jury verdict in the insured's favor and concluded that:

> Where there is a pre-existing illness or disease and an accidental injury and a loss or disability results, the pivotal issue is whether the accidental injury was the proximate cause of the resulting loss. A pre-existing disease or illness, although contributing to the loss resulting from the accident, does not relieve the insurer of liability where the accident is the proximate cause of the loss.

*Id.* at 368.

The link between the disease and the loss is much more attenuated in this case. In *Carlson* the disease itself was the basis for the loss and stood between the injury and the loss. Here there was no direct relationship between Aguilar's disease and his death, as it is beyond dispute that he died as the result of gunshot wounds.

In other cases the connection between the disease and the injury is a close and natural one. For example, the insureds in *Russell v. Metropolitan Life Insurance Co.*, 108 Ill.App.3d 417, 64 Ill.Dec. 160, 439 N.E.2d 89 (4th Dist.1982) and *Marsh v. Metropolitan Life Insurance Co., Inc.*, 70 Ill.App.3d 790, 27 Ill.Dec. 158, 388 N.E.2d 1121 (2d Dist.1979) were addicted to alcohol and heroin respectively and died of overdoses. In both cases the court found as a matter of law that the death had been accidental and the beneficiaries entitled to collect. Exclusionary provisions similar to the one in this case were included in each of the policies.

The causal connection between the disease and the injury is much less clear in this case than in *Marsh* or *Russell*. There, the injury suffered by the insured was the easily foreseeable consequence of the disease from which he suffered. In contrast, Aguilar's gunshot wound at the hand of the police was hardly a natural or foreseeable consequence of his illness.

A closer analog to the causal relationship in this case is where the accident leading to the loss is caused by a disease which nevertheless is not the actual agent of death. In *Sturm v. Employers Liability Assurance Corp., Ltd.*, 212 Ill.App. 354 (1918), the evidence suggested that the insured's diseased condition may have caused him to fall into a tub and drown. *See also Dietz v. Metropolitan Life Insurance Co.*, 305 Ill.App. 507, 27 N.E.2d 540 (1st Dist.1940) (epileptic fit caused drowning in tub), *Burns v. Metropolitan Life Insurance Co.*, 283 Ill.App. 431 (1936) (arteriosclerosis induced dizziness caused fall out of window). The *Sturm* court's discussion of the applicability of the accident insurance policy where a disease played a crucial role in causing the injury which led to the loss is instructive:

> Even though the insured were diseased and his abnormal condition led to his falling into the water and being drowned and so in a sense contributed to his

death—it is not the law that contribution of disease to his death would prevent the plaintiff from recovering. The law distinguishes between so-called successive causes as between successive physical conditions; and the proximate excludes the more remote. If the deceased came to his death by drowning, then legally, that was the sole cause of his death.

*Id.* at 364 (citations omitted).

In this case the link between Aguilar's disease and his loss is not as direct since the injury resulted from an intervening human agency, the actions of the police who shot him.

### III.

■ The operative notion of causation in the accident insurance area, as in other areas of law, is similar in name only to the scientific concept of causation. Legal causation is a kind of shorthand used by courts to explain results reached by the application of a largely unspecified set of moral, economic, legal and social principles to the competing interests involved. The plain language of exclusionary provisions in insurance contracts embodies the expansive scientific understanding of causation. Yet the courts have resisted applying this notion of causation because such application flies in the face of the expectations of the insured, the adhesive nature of insurance contracts, and common, persistent notions of fairness. *See generally*, Note, *A Common Law Alternative to the Doctrine of Reasonable Expectations in the Construction of Insurance Contracts*, 57 N.Y.U.L. Rev. 1175, 1178–84 (1982). Justice Cardozo, in an influential accident insurance opinion, noted this tension between scientific and legal causation in a case where an accident ruptured the insured's stomach at the point of a tiny dormant ulcer:

> An ulcer as trivial and benign as an uninfected pimple is at most a tendency to [a disease], and not [a disease] itself. Any different construction would reduce the policy and its coverage to contradiction and absurdity. The infinite interplay of causes make it impossible to segregate any single cause as operative at any time and place to the exclusion of all

others, if cause is to be viewed as a concept of science and philosophy.

*Silverstein v. Metropolitan Life Insurance Co.*, 254 N.Y. 81, 171 N.E. 914, 915 (1930). *See also Taylor v. John Hancock Insurance Co.*, 11 Ill.2d 227, 142 N.E.2d 5 (1957).

This court's denial of Connecticut General's renewed motion for summary judgment is thus based on the narrower concept of legal causation which has permitted courts for many decades to achieve results rooted in prevailing notions of substantive fairness yet cast in the legitimating terminology of science. We have found that the relationships between disease, injury and loss in this case are similar to those in other cases where recovery under an accident insurance policy was allowed. There is nothing in the facts of this case nor in the ever changing constellation of social, moral, legal and economic factors under which this court works which prompts us to reach a different result. Consequently, we will not tinker with the prevailing understanding and application of legal causation in the accident insurance area.

### IV. CONCLUSION

Connecticut General's motion for summary judgment is denied.