Dorothy M. ARNOLD, Plaintiff–
Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 91–2669.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1992.

Decided Aug. 6, 1992.

---

David M. Foreman (argued), James C. Cooksey, Crain, Cooksey, Veltman & Miller, Centralia, Ill., for plaintiff-appellant.

William J. Toppeta, Amy K. Posner (argued), Metropolitan Life Ins. Co., Law Dept., New York City, for defendant-appellee.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Dorothy Arnold is the designated beneficiary under a certificate of insurance issued to her son Steven. She filed this suit against Metropolitan Life Insurance Company to enforce the accidental death benefits provision of the insurance policy on the life of her son. Those benefits amounted to $60,000 plus interest. The defendant successfully moved for summary judgment on the ground that Steven's death from "Russian Roulette" was not accidental. Plaintiff has appealed from that ruling.

FACTS

Steven Arnold, a former correctional officer for the State of Illinois, had a history of playing Russian Roulette in front of his ex-wife.[1] During their marriage, the local police chief once confiscated Arnold's revolver when he was threatening to harm himself with it. Steven also threatened his life by breathing the exhaust from his Jeep when his former wife left him. However, he abandoned the vehicle before suffering any significant injuries.

During a quarrel with his subsequent live-in girlfriend a few days before his death, Steven threatened to kill himself with his revolver but did not do so. Then, very early on Saturday, June 4, 1988, they fought over possession of the fully loaded Smith and Wesson six-shot revolver. During their struggle all of the bullets fell out. Steven put one of the bullets back in the revolver, spun the cylinder containing the bullet, held the gun to his head and fatally shot himself. The defendant insurance company argues that Steven's death from Russian Roulette was reasonably foreseeable, and thus not accidental. Plaintiff, on the other hand, presents testimony suggesting that Steven had no intent to kill himself and that he fired the loaded gun at his head, not in order to commit suicide, but rather to intimidate his girlfriend into acting as he wished. As such, plaintiff contends that Steven's death was unintended and therefore accidental.

ANALYSIS

In this diversity case, in the absence of an Illinois Supreme Court decision in point, we must look to the decisions of the Appellate Court of Illinois. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 see also *Indianapolis Airport Authority v. American Airlines, Inc.*, 733 F.2d 1262 (7th Cir.1984). That court has once followed and at other times discussed with approval decisions from other jurisdictions holding that deaths from Russian Roulette do not qualify as accidental within the meaning of life insurance policies. Since neither we nor plaintiff have found any contrary cases, we conclude that Illinois law does not recognize Russian Roulette deaths as accidental in order to qualify for accidental death insurance benefits.

Three Illinois cases suggest that under Illinois law, death resulting from playing Russian Roulette is not accidental. First, in *Crespo v. John Hancock Mutual Life Ins. Co.*, 41 Ill.App.3d 506, 519, 354 N.E.2d 381 (1st Dist.1976), the Appellate Court of Illinois stated that in playing Russian Roulette, if, as here, Crespo had "been aware that the gun was loaded, a judgment in favor of defendant [insurer whose policy

---

1. Webster's Ninth New Collegiate Dictionary (1990) defines "Russian Roulette" as "an act of bravado consisting of spinning the cylinder of a revolver loaded with one cartridge, pointing the muzzle at one's own head, and pulling the trigger."

excluded accidental death] would be sustainable," citing *Koger v. Mutual of Omaha Ins. Co.*, 152 W.Va. 274, 163 S.E.2d 672 (1968), and *Thompson v. Prudential Insurance Co.*, 84 Ga.App. 214, 66 S.E.2d 119 (1951). In *Koger* the West Virginia Supreme Court of Appeals held that death from "the precarious and ridiculous 'game' of Russian Roulette" is intentional and not accidental. 163 S.E.2d at 676. Similarly, in *Thompson*, where the insured removed all but one cartridge from the revolver and was killed when playing Russian Roulette, the Georgia Court of Appeals held that death was not caused by accidental means. The *Thompson* court stated that

"where one engages in a game of Russian Roulette * * * his death or injury is no less intentional than had the gun been fully loaded and his death or injury cannot be said to have been the result of accident or effected by accidental means. In such a case, it will be presumed that the participant intended that he should be killed or injured should fate stop the cartridge in the spinning cylinder in firing position." 66 S.E.2d at 123.

*Thompson* was discussed with apparent approval in a second Illinois appellate court case—*Rodgers v. Reserve Life Ins. Co.*, 8 Ill.App.2d 542, 546–548, 132 N.E.2d 692 (2d Dist.1956). Finally, *Marsh v. Metropolitan Life Insurance Co.*, 70 Ill.App.3d 790, 793, 27 Ill.Dec. 158, 388 N.E.2d 1121 (2d Dist.1979), acknowledges that the cases involving Russian Roulette hold that death therefrom is foreseeable rather than accidental.[2]

Based on the Appellate Court of Illinois cases and their citation to precedent from other jurisdictions, we hold that under Illinois law, death from Russian Roulette is not considered accidental. Plaintiff makes a strong argument that Illinois cases concerning accidental death outside the Russian Roulette context suggest that plaintiff should be entitled to recovery under Illinois' extremely liberal accidental death benefit approach which does not distinguish between accidental means and accidental results. See, *e.g.*, *Taylor v. John Hancock Ins. Co.*, 11 Ill.2d 227, 142 N.E.2d 5 (1957). However, in *Marsh* the Appellate Court of Illinois counseled that "cases involving 'Russian Roulette' are not analogous [to other deaths from consciously incurring known hazards] in terms of the level of foreseeability." 70 Ill.App.3d at 793, 27 Ill.Dec. 158, 388 N.E.2d 1121. Therefore, plaintiff's analogies to cases outside the context of Russian Roulette must fail.

Plaintiff also makes astute but ultimately unpersuasive attempts to distinguish this case from other Russian Roulette cases. First plaintiff contends that this case is unlike an ordinary Russian Roulette case because Steven believed that due to the weight of the bullet, it would automatically fall to the bottom when the cylinder was spun, and therefore would not fire when the trigger was pulled. But the fact that Steven thought he was playing Russian Roulette with "loaded dice" so to speak, does not change the fact that he knew he was playing Russian Roulette. See *Thompson v. Prudential Ins. Co.*, 84 Ga.App. 214, 66 S.E.2d 119 (1951). In that case too the insured, who died while playing Russian Roulette, had previously told others that after spinning the cylinder the gun would not fire because the bullet would always land at the bottom, away from the firing pin.

Second, plaintiff asserts that this is not a traditional case of Russian Roulette because bullets protrude slightly from the chamber of a revolver and Steven looked to see which chamber contained the bullet before he fired the gun. Although the only witness to the shooting testified that her eyes were closed at that time, plaintiff

---

**2.** The same conclusion has been reached in still two other jurisdictions: *C.M. Life Ins. Co. v. Ortega*, 562 So.2d 702, 704 (Fla.Ct.App. 3d Dist. 1990), review denied, 576 So.2d 289 (1991) (where an individual knew gun was loaded and made a conscious decision to play Russian Roulette, his death was a reasonable and probable consequence of his volitional act and therefore within suicide exception in life insurance policy); *Nicholas v. Provident Life & Accident Ins. Co.*, 61 Tenn.App. 633, 457 S.W.2d 536, certiorari denied by Tenn.Sup.Ct. (1970) (death by Russian Roulette is not accidental).

presents testimony that the decedent had previously stated when playing Russian Roulette he discerned the location of the bullet before firing. Thus plaintiff claims that the accident is analogous to cases in which the insured believed he was firing an empty gun. This same argument was rejected in *Nicholas v. Provident Life & Accident Ins. Co.*, n. 2 *supra*, on the basis that as long as "the decedent knew that there was one live cartridge in the cylinder," he had no right to recovery. The foreseeability of death from firing a loaded gun is different not just in degree but in kind from the foreseeability of death from firing what a person believes to be an unloaded gun. Consequently, under the above circumstances, the district court was justified in holding that Steven's death was not accidental under the terms of the insurance policy.

Judgment affirmed.